**UNITED STATES of America, Appellee,**

**v.**

**Tony WONG, Victor Ventura, Rigoberto Ramos and Pedro Taveras, Defendants,**

**Roberto Figueroa, also known as Cessi, and Hector Rivera, Defendants-Appellants.**

Nos. 323, 308, Dockets 95–1071(L), 95–1198.

United States Court of Appeals, Second Circuit.

Argued Nov. 28, 1995.

Decided March 13, 1996.

---

M. Katherine Baird, New York City (Alexandra Rebay, Assistant United States Attorney, Mary Jo White, United States Attorney for the Southern District of New York, on the brief), for Appellee United States of America.

Barry E. Schulman, Brooklyn, N.Y. (Guy Oksenhendler, Schulman & Laifer, Brooklyn, N.Y., on the brief), for Defendant–Appellant Roberto Figueroa.

Richard Levitt, New York City, for Defendant–Appellant Hector Rivera.

Before: LUMBARD, ALTIMARI and JACOBS, Circuit Judges.

JACOBS, Circuit Judge:

We have previously affirmed the conviction of defendants Roberto Figueroa and Hector Rivera, after a jury trial in United States District Court for the Southern District of New York (Keenan, *J.*), for conspiracy to distribute and possession with intent to distribute cocaine and heroin in violation of 21 U.S.C. §§ 846, 841(b)(1)(A) and 841(b)(1)(B).

*United States v. Figueroa,* 907 F.2d 144 (2d Cir.), *cert. denied,* 498 U.S. 856, 111 S.Ct. 154, 112 L.Ed.2d 119 (1990). Figueroa and Rivera now appeal two post-trial orders issued by the district court.[1]

Figueroa appeals the district court's order denying his motion for a new trial, made pursuant to Fed.R.Crim.P. 33. On appeal, Figueroa contends that a new trial is required because of: (i) newly produced evidence of testimony given at two earlier criminal trials by Miguel Teixeira, a paid confidential informant who testified for the government in Figueroa's trial, that could have been used to impeach Teixeira's testimony; (ii) newly discovered evidence that Victor Ventura, a co-defendant who testified for the government in Figueroa's trial, received additional undisclosed consideration from the government in return for his testimony; and (iii) newly discovered evidence that Teixeira, who was subsequently convicted of perjury in an unrelated trial, had perjured himself during Figueroa's trial by claiming to have paid his 1988 taxes.

Rivera appeals the district court's order denying his motion, made pursuant to Fed. R.Crim.P. 6(e), to compel production of certain minutes of the grand jury proceeding that resulted in his indictment. Rivera contends that the district court applied the wrong standard in denying this motion, and that the grand jury testimony of any trial witness called by the government should have been produced by the government pursuant to Fed.R.Crim.P. 26.2 at the close of direct examination of that witness.

Notwithstanding certain unsettling aspects of Teixeira's testimony, we conclude that the new impeachment evidence that Figueroa presents is insufficient to undermine the jury's verdict of conviction, and we therefore affirm the district court's decision. As to Rivera, we conclude that he may—or may not—be able to show a "particularized need" for the grand jury testimony that he seeks. Because a particularized need may be established in circumstances other than where grand jury testimony will assist the trier of fact, we vacate the decision of the district court on Rivera's motion to compel, and remand for a further determination of that issue.

## BACKGROUND

### A. *Events Leading to Conviction.*

On September 8, 1988, defendant Victor Ventura was introduced to Miguel Teixeira by Sergio Quijada–Rey at the Buccaneer Diner in Queens. Both Teixeira and Quijada–Rey were paid informants for the Drug Enforcement Administration ("DEA"). At that meeting, Ventura gave Teixeira two heroin samples and discussed plans for possible narcotics transactions. A second meeting on September 21, 1988, at the Cantina restaurant in Manhattan was attended by Teixeira, Ventura, Juan Silvestro (Ventura's brother-in-law) and Quijada–Rey. During that meeting, Teixeira told Ventura that he wanted to buy two kilograms of heroin and five kilograms of cocaine. Ventura told Teixeira that his partner, who (Ventura claimed) operated a drug distribution business out of a Manhattan service station, could supply these quantities. Ventura did not mention the name of this partner at that meeting. As DEA agents trailed Ventura over the next month, they observed him on occasion in Figueroa's company at a Texaco service station in Manhattan.

On November 8, 1988, Ventura advised Teixeira by phone that he was prepared to sell him five kilograms of cocaine and two kilograms of heroin, and arranged a meeting at a restaurant located next to the Texaco station at which DEA agents had previously observed Figueroa. Before Teixeira arrived at the restaurant, named Mexico–Next–To–Texaco, DEA agents watched an unidentified man carry several plastic grocery bags into the office of the adjoining Texaco gas station and then carry those same bags out of the office to a car parked across the street. Later that evening, Teixeira, Ventura, Quijada–Rey and defendant Pedro Taveras met at Mexico–Next–To–Texaco to do the deal.

---

1. On June 23, 1995, this Court granted the government's motion to consolidate the appeals of Figueroa and Rivera.

Once the terms were settled, Ventura instructed Teixeira to park his car next to the gasoline pumps at the Texaco station. There, Figueroa showed Teixeira a kilogram of heroin and told him that the rest of the drugs were in a car across the street. Teixeira then left the gas station, ostensibly to retrieve cash to pay for the drugs. When he returned to the gas station, he was instructed to enter the garage, where Figueroa gave him a paper bag containing heroin. At this point, DEA agents descended on the scene and arrested so many persons that, according to Figueroa, "they ran out of handcuffs." Agents recovered two kilograms of heroin from the Texaco station and four kilograms of cocaine from plastic grocery bags located in the car parked across the street. Later that evening, they arrested defendant Hector Rivera as he drove into the Texaco station.

Figueroa, Rivera, Ventura and three others were charged with conspiracy to distribute cocaine and heroin, in violation of 21 U.S.C. § 846, and with possession of two kilograms of heroin with intent to distribute, in violation of 21 U.S.C. § 841(b)(1)(A). In addition, Figueroa, Rivera and Ventura were charged with possession of four kilograms of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(b)(1)(B).[2] Prior to trial, Ventura pleaded guilty to one count of possession of heroin and agreed to testify for the government. In a motion dated March 9, 1989, defense counsel demanded that the government turn over all materials required to be produced under 18 U.S.C. § 3500 and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). On April 20, 1989, the district court granted that motion.

The trial began on May 12 and ended on May 30, 1989. Teixeira was the government's star witness. Teixeira testified that for over six years he had worked as a full-time confidential informant with various law enforcement agencies. For the preceding two years, Teixeira worked with the DEA as a full-time informant, and before that had worked as an informant for the New Jersey police and the New Jersey Narcotics Task Force. Teixeira proceeded to testify as to his involvement with the defendants and the

events described above, furnishing some of the most inculpatory evidence against Figueroa.

On direct examination, Teixeira testified that he was paid a "salary" of $2,000 per month, and was eligible for "bonuses" based on the number of arrests made and the quantity of drugs seized as a result of his services. On cross-examination, Figueroa's counsel demonstrated Teixeira's alleged bias in favor of the government by eliciting testimony that, over an eighteen-month period, Teixeira had realized income of more than $82,000 from the government under this arrangement, and more than $11,500 of that sum in the single month prior to trial. Figueroa's counsel also asked Teixeira whether he paid taxes on his income from the government, to which Teixeira's responded, "I always did my taxes," adding that he had turned in his figures to the IRS for "[t]his year"—presumably the 1988 tax year. Much later in his testimony, however, while under cross-examination by counsel for one of Figueroa's codefendants, Teixeira admitted that he had filed no tax return for 1988, that he had spoken to the IRS concerning a possible extension of the filing deadline for his 1988 tax return, and that his fiancée's father was preparing his 1988 return. On re-cross by Figueroa's counsel, Teixeira declared that he had paid his taxes every year since entering the country (in 1980), but admitted moments later that he did not file a 1987 tax return. In summation, defense counsel exploited this change of testimony about taxes, as well as the evidence of bias and interest, to attack Teixeira's credibility.

Ventura testified that he had been employed at the Texaco station for less than a year, that Figueroa and Rivera were partners in a heroin business operated out of the station, and that he assisted them from time to time by delivering heroin and collecting money. Ventura also testified as to the sequence of events leading up to his arrest and as to Figueroa's participation in the attempted drug sale. Several DEA agents described their surveillance activities, the seizure of physical evidence and the arrest of the defendants.

---

**2.** A fourth count against Rivera and Figueroa was dismissed before trial.

The jury convicted Figueroa and Rivera on all counts. On September 19, 1989, Judge Keenan sentenced Figueroa to 24 years of imprisonment, followed by 10 years of supervised release, and imposed a $20,000 fine. Rivera was sentenced to 21½ years of imprisonment, to be followed by 10 years of supervised release.

### B. *Post–Trial Events and Figueroa's Motion for A New Trial.*

In May 1991, in a subsequent unrelated trial, *United States v. Reyes,* 90 Cr. 715 (S.D.N.Y.), Teixeira was confronted on cross-examination with the testimony he had given in *Figueroa* regarding his taxes. Teixeira asserted that he paid his 1988 taxes in March 1990, and that it was "possible, yes sir," that he had "made up" his testimony in the *Figueroa* trial that he had already (in May 1989) filed his federal tax return for 1988.

In April 1990, Teixeira testified in *United States v. Villada–Arango,* 89 Cr. 886 (S.D.N.Y.), that he had just filed his 1988 tax return "last Friday or Saturday." Whether or not Teixeira ever did get around to filing his 1988 return, he had not filed it at the time he testified in *Villada–Arango.* Teixeira was later indicted for that perjury, to which he pleaded guilty on February 13, 1992. (No perjury charges were lodged in connection with Teixeira's testimony in *Figueroa.*) In a letter dated May 21, 1992, the government advised Figueroa's counsel of Teixeira's plea. The government further advised that Teixeira had given similar false testimony in the *Reyes* trial, which also postdated the *Figueroa* trial, and that Teixeira had also failed to file tax returns for the years 1980 and 1982. For the first time, the government furnished defense counsel in *Figueroa* with a list of trials in which Teixeira had testified, two of which occurred prior to Figueroa's trial (*United States v. Restrepo,* 88 Cr. 301 (S.D.N.Y.), and *United States v. Salcedo,* 88 Cr. 521 (S.D.N.Y.)). In both the *Restrepo* and *Salcedo* trials, Teixeira testified that he had not filed a 1987 income tax return.[3] Despite the district court's pre-trial

order that the government divulge any *Brady* material to the defense, Teixeira's testimony in those trials was not furnished to Figueroa prior to trial. On May 29, 1992, Figueroa moved for a new trial based on that newly discovered evidence. On March 29, 1995, the district court denied that motion.

### C. *Rivera's Motion to Compel Production.*

On February 25, 1994, Rivera filed a motion pursuant to Fed.R.Crim.P. 6(e)(3)(C)(ii) for a copy of the grand jury minutes bearing on his indictment. In support of his motion, Rivera filed an affirmation in which he stated that he needed a copy of Teixeira's grand jury testimony in order to attack Teixeira's credibility in a *habeas corpus* proceeding pursuant to 28 U.S.C. § 2255. On December 6, 1994, the district court denied Rivera's motion on the ground that the need for continued secrecy outweighed the alleged need for disclosure.

### DISCUSSION

### A. *Figueroa's Motion For A New Trial.*

On appeal, Figueroa contends that a new trial is warranted because (i) the government withheld critical evidence that could have been used to impeach Teixeira; (ii) the government failed to disclose that Ventura, another government witness, had allegedly received "substantial consideration" for his testimony; and (iii) Teixeira's perjured testimony in the *Villado–Arango* trial demonstrates that he committed perjury in the *Figueroa* trial.

 We review for abuse of discretion a district court's denial of a motion for a new trial made pursuant to Rule 33. *United States v. Mayo,* 14 F.3d 128, 132 (2d Cir. 1994); *United States v. Underwood,* 932 F.2d 1049, 1052 (2d Cir.), *cert. denied,* 502 U.S. 942, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991). Findings of fact made in connection with the denial of a motion for new trial are reviewed for clear error. *Underwood,* 932 F.2d at

---

**3.** When asked in *Salcedo* whether he "pa[id] income tax" for "the year 1987," Teixeira replied, "I didn't." When Teixeira testifies about a particular year's taxes, it is sometimes unclear whether he is referring to the year the income was earned or the year in which the return was filed (or not filed, as the case sometimes is).

1052. We separately consider each of Figueroa's contentions.

### 1. *Failure To Disclose Teixeira's Prior Testimony.*

█ Figueroa argues that a new trial is warranted because the government intentionally failed to disclose transcripts of Teixeira's prior testimony in the *Restrepo* and *Salcedo* trials. Those transcripts indicate that Teixeira received a tidy and regular income over a period of several years for serving as an informant, and that his cooperation in ongoing drug investigations may have earned him favorable treatment by the Immigration and Naturalization Service. In addition, while his testimony was unclear, Teixeira admitted in those trials either that he did not file an income tax return for 1987, or that he did not file an income tax return for 1988 reporting his 1987 income. As Figueroa contends, this newly produced evidence reflects Teixeira's bias, interest, and dishonesty.

█ At the outset, we note that "a [Rule 33] motion for a new trial based upon previously-undiscovered evidence is ordinarily 'not favored and should be granted only with great caution.'" *United States v. Stofsky,* 527 F.2d 237, 243 (2d Cir.1975) (quoting *United States v. Costello,* 255 F.2d 876, 879 (2d Cir.), *cert. denied,* 357 U.S. 937, 78 S.Ct. 1385, 2 L.Ed.2d 1551 (1958)), *cert. denied,* 429 U.S. 819, 97 S.Ct. 65, 50 L.Ed.2d 80 (1976). *See also United States v. Spencer,* 4 F.3d 115, 118 (2d Cir.1993) (new trial is warranted "only in the most extraordinary of circumstances" (citation and emphasis omitted)). A new trial is warranted under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), however, where (1) "the government failed to disclose favorable evidence, and (2) ... the evidence it 'suppressed' was material." *United States v. Payne,* 63 F.3d 1200, 1208 (2d Cir.1995) (citing *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196–97).

█ As to the first factor, "evidence whose disclosure is required under *Brady* may consist not only of exculpatory evidence but also of impeachment evidence." *Id.* at 1210 (citing *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985)). As to the second factor, evidence is material generally if it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley,* —— U.S. ——, ——, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995); *see also Bagley,* 473 U.S. at 678, 105 S.Ct. at 3381–82. Evidence of impeachment is material if the witness whose testimony is attacked "supplied the only evidence linking the defendant(s) to the crime," *United States v. Petrillo,* 821 F.2d 85, 90 (2d Cir.1987), or "where the likely impact on the witness's credibility would have undermined a critical element of the prosecution's case." *Payne,* 63 F.3d at 1210. However, new impeachment evidence is *not* material, and thus a new trial is *not* required "when the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable." *Id.* (citations omitted). *See also United States v. Rosner,* 516 F.2d 269, 273–74 (2d Cir.1975) (additional impeachment evidence was not material where other evidence supported conviction), *cert. denied,* 427 U.S. 911, 96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976). In sum, a new trial is warranted only if "the evidence is material, noncumulative, and would probably lead to an acquittal." *United States v. Locascio,* 6 F.3d 924, 949 (2d Cir.1993) (internal quotation marks and citation omitted), *cert. denied,* —— U.S. ——, 114 S.Ct. 1645, 128 L.Ed.2d 365 (1994).

The government concedes that the transcripts of Teixeira's prior testimony should have been disclosed as *Brady* material, as well as pursuant to 18 U.S.C. § 3500 and in compliance with the district court's disclosure order; but the government argues that these transcripts were not material to the outcome of the trial because Teixeira's credibility was called into question by the defense in cross-examination, and therefore that the further evidence eroding his credibility would have been merely cumulative.

We agree with the district court that any evidence of bias, interest or dishonesty stemming from Teixeira's prior testimony in *Restrepo* or *Salcedo* would not have been material to the outcome of the trial. Figueroa's

jury was aware that Teixeira's testimony regarding his taxes was untrue, because Teixeira recanted it later in the cross-examination. Thus, on the one hand Teixeira swore that he had always paid his taxes, and that he had turned in his 1988 income figures to the IRS at the time of trial; on the other hand Teixeira conceded under oath that, as of the time of trial in 1989, he had not yet filed his 1987 and 1988 tax returns. In summation defense counsel used Teixeira's inconsistent testimony concerning his taxes to attack his credibility. (The district court duly instructed the jury that it could disregard Teixeira's testimony in its entirety if the jury found him unworthy of credence.) Moreover, Teixeira testified that he had received a large sum of money from the government in exchange for testifying and serving as a confidential informant, and defense counsel exploited that testimony in summation to establish Teixeira's interest in the outcome of the case and his bias in favor of the government.

In short, defense counsel had sufficient ammunition concerning Teixeira's mendacity, interest and bias as to justify the district court's conclusion that the undisclosed impeachment evidence in the *Restrepo* and *Salcedo* transcripts was cumulative. It is also clear that independent evidence was adduced to corroborate Teixeira's testimony regarding Figueroa's participation in the drug deal.[4] We therefore hold that Figueroa is not entitled to a new trial based on newly disclosed evidence because it is probable that the evidence newly discovered would not have altered the outcome of the trial. *See United States v. Reyes,* 49 F.3d 63, 68 (2d Cir.1995) ("New evidence that is merely impeaching will not ordinarily justify a new trial."); *Locascio,* 6 F.3d at 949 (new trial not warranted unless evidence would "probably lead to an acquittal"); *United States v. Gordils,* 982 F.2d 64, 72 (2d Cir.1992) (affirming denial of Rule 33 motion where impeachment evidence was cumulative), *cert. denied,* 507 U.S. 1054,

113 S.Ct. 1953, 123 L.Ed.2d 657 (1993); *United States v. White,* 972 F.2d 16, 22 (2d Cir.) (cumulative evidence is "routinely held insufficient to warrant a new trial"), *cert. denied,* 506 U.S. 1026, 113 S.Ct. 669, 121 L.Ed.2d 593 (1992).

### 2. *Evidence of Ventura's Interest.*

■ Figueroa next contends that a new trial is warranted based on newly discovered evidence of Ventura's interest and bias. Figueroa alleges that Ventura received consideration for his testimony that was never disclosed to the defense as required under section 3500 and *Brady.* According to Figueroa, this consideration was granted in the form of a great favor to one Pedro Taveras, who is Ventura's cousin. It appears undisputed that Taveras, an indicted co-defendant in this case, was released on bail and fled to the Dominican Republic.[5] Counsel for Figueroa recounted the following allegations in a May 1992 affidavit filed with the district court: that, after Ventura's arrest, Taveras acted as a translator when Ventura was interviewed by the government; that Ventura sought favorable treatment for himself and Taveras in exchange for saying "anything"; that Ventura assured Taveras that Taveras would get "out of here"; and that the government did not fight Taveras's release on $100,000 bail (secured by $5000).

Taveras's story, as recounted in the attorney's affidavit, relies on *post hoc* reasoning that is unsupported by a chronology of events. As the district court observed, Taveras's bail was set on November 15, 1988; yet Ventura was not indicted and did not first meet with prosecutors to discuss cooperation until November 22, 1988, and did not enter into a cooperation agreement with the government until April 17, 1989. Even assuming that the bond was set at an unusually low figure, as Figueroa asserts, Figueroa

---

**4.** Ventura's testimony confirmed that Figueroa was involved in a drug conspiracy with Hector Rivera; that Figueroa and Rivera operated out of the Texaco station; and that Figueroa and Rivera occasionally used Ventura to deliver drugs and money. Several DEA agents testified as to the events leading up to Figueroa's arrest. Finally,

two kilograms of cocaine were found in Figueroa's Texaco station.

**5.** Taveras was apprehended in 1993, pled guilty in district court to bail-jumping, and was sentenced on June 28, 1993, to 18 months' imprisonment.

cannot establish a cause and effect relationship between Ventura's cooperation agreement and the setting of Taveras's bail five months earlier.

Moreover, such additional evidence of Ventura's interest, even if credible, would not warrant a new trial. For reasons stated above, a defendant who makes a Rule 33 motion must show a reasonable probability that, had the new evidence been disclosed, the jury would have arrived at a different result. *Kyles,* —— U.S. at ——, 115 S.Ct. at 1566. Additional impeachment evidence will not meet the standard expressed in *Kyles* if it "merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable." *Payne,* 63 F.3d at 1210. Here, defense counsel attacked Ventura's credibility on cross-examination by offering abundant evidence of Ventura's interest and bias, including his written agreement with the government. Evidence concerning Ventura's interest in the bail arrangement for Taveras would therefore have been cumulative, and for that reason does not warrant a new trial.

### 3. *Teixeira's Perjured Testimony.*

▆ Figueroa next argues that the government knowingly permitted Teixeira to commit perjury when he testified on cross-examination that he "always did [his] taxes" and that he filed a 1988 tax return. Figueroa contends that the government knew, or should have known, that Teixeira's testimony with respect to his income tax filings was perjurious when made because Teixeira had previously testified, in both the *Restrepo* and *Salcedo* trials, that he had not paid any income tax in 1987. In *Restrepo,* Teixeira further conceded that his failure to pay income tax was a criminal act.

▆ If newly discovered evidence indicates that testimony given at trial was perjured, the grant of a new trial depends on "the materiality of the perjury to the jury's verdict and the extent to which the prosecution was aware of the perjury." *United States v. Wallach,* 935 F.2d 445, 456 (2d Cir.1991), *cert. denied,* 508 U.S. 939, 113 S.Ct. 2414, 124 L.Ed.2d 637 (1993). Where the prosecution knew or should have known

of the perjury, a new trial is warranted if "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id.* (quoting *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976)); *see also Sanders v. Sullivan,* 863 F.2d 218, 225 (2d Cir.1988) (question is whether the jury's verdict "might" be altered). *But see United States v. Stofsky,* 527 F.2d 237, 243 (2d Cir. 1975) (where government knowingly offers perjured testimony, new trial is "virtual[ly] automatic"). However, where the government was unaware of the perjury at the time of trial, "a new trial is warranted only if the testimony was material and 'the court [is left] with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted.'" *Wallach,* 935 F.2d at 456 (quoting *Sanders,* 863 F.2d at 226).

For purposes of analysis, the district court proceeded on the assumption that the government knew that Teixeira's testimony was perjurious when made. That assumption was supported by some of the evidence presented to the district court. Prior to the *Figueroa* trial, Teixeira had testified in both the *Restrepo* and *Salcedo* trials that he had not paid any income taxes for 1987. In all of his assignments, Teixeira had worked with the same DEA agent, who was present throughout the *Restrepo, Salcedo* and *Figueroa* trials. All three of these cases were prosecuted by the office of the United States Attorney for the Southern District of New York. It can be argued, therefore, that the government knew or should have known that Teixeira's statements at the *Figueroa* trial that "I always did my taxes," and that he filed his 1987 and 1988 tax returns, were false when made. *See Wallach,* 935 F.2d at 457 ("[G]iven the inconsistencies in [government witness's] statements the government should have been on notice that [the witness] was perjuring himself.").

On the other hand, Teixeira's false testimony in the *Figueroa* trial was first elicited not by the government, but by defense counsel on cross-examination. That testimony was partially impeached on cross-examination, and then was further discredited, and recant-

ed, on re-cross. In addition, throughout Teixeira's testimony, there was ambiguity as to whether his reference to a particular year was intended to signify the tax year (*i.e.*, the year in which he earned income on which taxes were due), or the year in which he filed a return in respect of that tax year. These circumstances, in our view, may support a finding that the government should not be charged with knowledge of Teixeira's perjury. The district court, however, did not decide whether Teixeira's testimony in the *Figueroa* trial was perjurious, or whether the government knew that Teixeira's testimony was perjurious.

■ Even assuming, as the district court did, that the government knowingly introduced the perjured testimony, Figueroa is not entitled to a new trial. Where the government knowingly allows perjured testimony to be introduced, a new trial is warranted if there is a "reasonable likelihood" that the false testimony affected the judgment of the jury. *Wallach*, 935 F.2d at 456 (citation omitted). No doubt, new impeachment evidence may satisfy the "reasonable likelihood" standard where a conviction depends on the testimony of a single government witness, or on a witness whose credibility was not attacked on cross-examination. *See, e.g., id.* at 457–58; *Stofsky*, 527 F.2d at 246 (recognizing possibility that new evidence regarding credibility of witness may warrant new trial). But where independent evidence supports a defendant's conviction, the subsequent discovery that a witness's testimony at trial was perjured will not warrant a new trial. *See, e.g. United States v. Reyes*, 49 F.3d 63, 68 (2d Cir.1995) (where government agent subsequently discovered to have perjured himself, new trial not warranted where "core of the evidence" came from a different witness).

The circumstances do not suggest that the undisclosed evidence of Teixeira's perjury would have affected the result. Ample evidence supports Figueroa's conviction. *See supra* note 4. The additional evidence concerns a collateral issue (Teixeira's taxes), and "d[oes] not refute any of [the witness's] testimony against" Figueroa. *Reyes*, 49 F.3d at 68. And Teixeira's testimony regarding his

taxes was impeached—actually recanted—on further cross-examination, so that further impeachment evidence on that issue would have been cumulative. For these reasons, the new evidence of Figueroa's perjury is "the sort of cumulative impeachment material that is routinely held insufficient to warrant a new trial," *United States v. White*, 972 F.2d 16, 22 (2d Cir.), *cert. denied*, 506 U.S. 1026, 113 S.Ct. 669, 121 L.Ed.2d 593 (1992), because it does not "undermine the confidence in the verdict." *Whitley*, —— U.S. at ——, 115 S.Ct. at 1566. Since the jury would probably *not* "have altered its verdict had it known of [Teixeira's] false testimony," *Wallach*, 935 F.2d at 458, a new trial is not required.

## B. *Rivera's Motion to Compel Production.*

■ Hector Rivera appeals the district court's denial of his motion to compel production of a copy of the grand jury minutes bearing upon his indictment. In a *pro se* motion made pursuant to Fed.R.Crim.P. 6(e)(3)(C)(i), Rivera requested the transcript of the grand jury testimony in aid of a pending *habeas corpus* petition. In an accompanying affirmation, Rivera stated that he needed the transcript of Teixeira's grand jury testimony in order to show that Teixeira had committed perjury in the *Figueroa* trial. Rivera contends that the district court's December 6, 1994 order applied an incorrect standard in denying the motion on the ground that "the need for continued secrecy is greater than the alleged need for disclosure."

On June 9, 1995, the government filed a motion in this Court for leave to supplement the appellate record. The accompanying affirmation of Assistant United States Attorney M. Katherine Baird stated that Teixeira had not in fact testified before the grand jury; that Special Agent Russell Benson testified before the grand jury; and that Benson's testimony was produced to the defense prior to trial pursuant to 18 U.S.C. § 3500. On June 30, 1995, Rivera filed a brief in opposition to the government's motion to supplement, stating that he had never received or reviewed the Jencks Act material regarding Agent Benson. Accordingly, Rivera requested that the government produce

the grand jury minutes with respect to Agent Benson's testimony. On November 11, 1995, we granted the government's motion to supplement the record.[6]

Rule 26.2(a) of the Federal Rules of Criminal Procedure, which incorporates the Jencks Act, 18 U.S.C. § 3500, provides:

> After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the government or the defendant and the defendant's attorney ... to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified.

Rule 26.2(f)(3) expressly defines the "statement" of a witness to include a statement made by a witness to a grand jury. *See also United States v. Ramirez*, 482 F.2d 807, 813 (2d Cir.) (§ 3500(e)(3) "entitles a defendant to the grand jury testimony of a government trial witness without any preliminary inspection for usefulness" by trial judge), *cert. denied*, 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 475 (1973); 2 Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 436–38 (1982 & Supp.1995).

■ Accordingly, under Rule 26.2 and 18 U.S.C. § 3500, the government was obligated to provide Rivera with the grand jury testimony of witnesses who testified at trial regarding the defendant, including Agent Benson. But while disclosure of a witness's grand jury testimony is mandatory under 18 U.S.C. § 3500 and Fed.R.Crim.P. 26.2 without any showing of "particularized need," motions for such disclosure must be made fairly close to the time of the witness's testimony at the trial. *See United States v. Scotti*, 47 F.3d 1237, 1250 (2d Cir.1995) (discussing timeliness for making motions under section 3500 and Rule 26.2). Here, however, Rivera has filed his motion for disclosure in a post-appeal, collateral proceeding under Rule 6(e)(3)(C)(i) as a preliminary step to bringing a judicial proceeding under 28 U.S.C. § 2255 challenging his conviction. Because Rivera

is proceeding under Rule 6(e)(3)(C), he must satisfy the "particularized need" test expressed in *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222–23, 99 S.Ct. 1667, 1674–75, 60 L.Ed.2d 156 (1979). *See United States v. Sells Engineering, Inc.*, 463 U.S. 418, 443, 103 S.Ct. 3133, 3148, 77 L.Ed.2d 743 (1983); *Dennis v. United States*, 384 U.S. 855, 869–70, 86 S.Ct. 1840, 1848–49, 16 L.Ed.2d 973 (1966).

■ The district court held that the only time a particularized need exists is when the grand jury testimony will assist the trier of fact. But a particularized need for a witness's grand jury testimony may also arise in other circumstances. *See, e.g., United States v. Alexander*, 860 F.2d 508, 512–14 (2d Cir. 1988) (government must show a particularized need for grand jury testimony to be used in connection with defendant's sentencing proceeding); *cf. Krilich v. United States*, 502 F.2d 680, 682 (7th Cir.1974) ("Non-compliance with [section 3500] which has as one of its purposes the effectuation of a constitutional right presents an issue of sufficient constitutional dimension to warrant consideration under 28 U.S.C. § 2255.") (footnote omitted), *cert. denied*, 420 U.S. 992, 95 S.Ct. 1429, 43 L.Ed.2d 673 (1975). Rivera claims to need the grand jury transcripts because disclosure will assist his collateral attack on the conviction by providing evidence that a witness lied at trial and before the grand jury. This may—or may not—be a sufficient showing of particularized need under the circumstances of this case. We therefore vacate the decision of the district court on Rivera's motion to compel and remand for a further determination of that issue.

The government contends that, regardless of whether the district court applied the correct standard, Rivera's motion to compel must be denied because (i) an affirmation by AUSA Baird now conclusively establishes that Teixeira did not testify before the grand jury; and (ii) the transcript of Agent Benson's grand jury testimony has already been produced. These circumstances, if proven, may foreclose Rivera from succeeding on his

---

**6.** In addition, on November 7, 1995, we granted a motion made by the government to supplement the appellate record and to file a supplemental appendix which includes the Baird affirmation.

motion to compel. But it is unclear whether the district court found that Rivera or his counsel actually received a copy of that grand jury testimony. And even if Rivera establishes (on remand) that the witness's grand jury testimony was not turned over to the defense, Rivera still must show particularized need under *Douglas, Dennis* and *Alexander* in order to prevail. On remand the district court is free to consider whether any of the testimony sought is, in fact, a "statement" under section 3500. *See Goldberg v. United States,* 425 U.S. 94, 108, 96 S.Ct. 1338, 1347, 47 L.Ed.2d 603 (1976).

Our decision in this case should not be construed as passing on the merits of Rivera's imminent *habeas corpus* petition, or the cognizability of any claims he anticipates to raise in such a petition.

## CONCLUSION

The decision of the district court denying Figueroa's motion for a new trial is affirmed. The decision of the district court denying Rivera's motion to compel is vacated, and Rivera's case is remanded for further proceedings.