11-611-cr
United States of America v. Orena (Sessa)

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2012

Heard: October 1, 2012         Decided: March 29, 2013

Docket No. 11-611-cr

- - - - - - - - - - - - - - - - - - - - - - - -
United States of America,

    Appellee,

          v.

Michael Sessa,

    Defendant-Appellant.[1]
- - - - - - - - - - - - - - - - - - - - - - - -

Before: NEWMAN, LYNCH, and LOHIER, <u>Circuit Judges</u>.

Appeal from the January 25, 2011, order of the United States District Court for the Eastern District of New York (Allyne R. Ross, District Judge), denying the Appellant's motion for a new trial.

Affirmed.

> Amy Busa, Assistant United States Attorney, New York, N.Y. (Loretta E. Lynch, United States Attorney for the Eastern District of New York, David C. James, Assistant United States Attorney, New York, N.Y., on the brief), for Appellee.
>
> Gail Jacobs, Esq., Great Neck, N.Y., for Appellant.

---

[1] The Clerk is directed to conform the official caption as above.

JON O. NEWMAN, Circuit Judge:

This appeal from the denial of motion for a new trial based on newly discovered evidence presents claims that the Government violated due process requirements by failing to disclose exculpatory information and failing to correct testimony known to be false. Defendant-Appellant Michael Sessa appeals from the January 25, 2011, order of the United States District Court for the Eastern District of New York (Allyne R. Ross, District Judge) denying his motion brought pursuant to Fed. R. Crim. P. 33 (the "Rule 33 motion"). See United States v. Sessa, Nos. 92-CR-351, 97-CV-2079, 2011 WL 256330 (E.D.N.Y. Jan. 25, 2011). That motion challenged his November 12, 1992, conviction for several crimes related to his participation in the Colombo organized crime family ("Colombo Family"). We affirmed that conviction. See United States v. Sessa, 41 F.3d 1501 (2d Cir. 1994) (mem.).

Because the District Court did not err in finding that (1) the allegedly exculpatory evidence was not suppressed and was not material and (2) the alleged perjury was not material to the Defendant's conviction, we affirm.

Background

The Defendant's conviction stemmed from his participation in the Colombo Family of La Cosa Nostra. In the 1980s, the Colombo Family was controlled by Carmine Persico and Gennaro Langella. After Persico and Langella were sentenced to lengthy prison terms in November 1986

-2-

and January 1987, an internal and ultimately violent rift developed in the Colombo Family between two factions vying for control of the Family. Sessa was aligned with the faction that remained loyal to Persico (the "Persico Faction"). The other faction aligned with Victor J. Orena, the "Acting Boss" during Persico's imprisonment (the "Orena Faction").

I. Evidence at the Defendant's Trial

The evidence at the Defendant's trial, which overwhelmingly established his guilt, is fully set forth in the District Court's opinion. See Sessa, 2011 WL 256330, at *3-*12. We summarize here only the evidence that is relevant to the issues on appeal.

Background testimony from Agent DeVecchio. Agent DeVecchio, the Government's first trial witness, primarily testified as an expert witness on organized crime. The District Court cautioned the jury that his testimony was only background information. DeVecchio also testified that there was an ongoing internal power struggle in the Colombo Family and that the struggle resulted in several murders and other crimes.

In two assertions that formed the foundation of the Defendant's perjury claims in his Rule 33 motion, DeVecchio also asserted that (1) if one of his informants committed a crime, he would report that crime to the federal prosecutor, and (2) he had never gone to a prosecutor to ask that one of his informants be given preferential treatment in a pending criminal matter.

Evidence of Anthony Coluccio's murder.  The Defendant's murder conviction resulted from the shooting death of Anthony Coluccio, a member of the Defendant's crew.  He was murdered in May 1989.  The evidence showed that Coluccio was killed because the Defendant and other members of the Colombo Family became concerned that Coluccio had become a vulnerable member – someone whom the police could convince to cooperate – after he started using and selling drugs. The Defendant and Joseph Ambrosino, a member of the Defendant's crew, were ordered to kill Coluccio by a higher authority in the Colombo Family.

The evidence about the Defendant's involvement in Coluccio's murder came almost exclusively from Ambrosino, who, by the time of the Defendant's trial, had agreed to cooperate with the Government. Ambrosino testified to the following: the Defendant arranged to have Coluccio meet him and Ambrosino in Brooklyn at 8:00 p.m. on May 16, 1989; he and the Defendant used a ruse to convince Coluccio to drive with them to Ambrosino's home in Staten Island;  when the three men were several blocks from his house, the Defendant, who was sitting in the back passenger seat of the car, shot Coluccio three times in the back of his head; Ambrosino and the Defendant left Coluccio's body in the car and walked about a block to a getaway car driven by another Colombo Family member; and the Defendant threw the gun into a storm drain on Rockland Avenue. More than two years later, after Ambrosino agreed to cooperate with the Government, the FBI found the gun in the storm drain, where Ambrosino had directed them to look.

-4-

II. Defendant's Conviction and Sentence

The Defendant was convicted after a jury trial of racketeering (18 U.S.C. § 1962(c)), racketeering conspiracy (18 U.S.C. § 1962(d)), conspiring to murder Coluccio (18 U.S.C. § 1959(a)(5)), murdering Coluccio (18 U.S.C. § 1959(a)(1)), conspiring to murder rival members of the Colombo Family (18 U.S.C. § 1959(a)(5)), conspiring to make extortionate extensions of credit (18 U.S.C. § 892), conspiring to use extortionate means to collect extensions of credit (18 U.S.C. § 894), and using and carrying a firearm in connection with crimes of violence (18 U.S.C. § 924(c)(1)). The Defendant was sentenced to life in prison on the racketeering and murder counts, concurrent terms of ten years on each of the two murder conspiracy counts and twenty years on each of the two loansharking counts, and a consecutive five-year term on the firearms count.

III. Information Developed After the Trial

DeVecchio's misconduct. In the years after the Defendant's conviction, significant evidence was developed documenting that Agent DeVecchio, the agent in charge of the investigation of the Colombo Family, was extremely careless, perhaps criminally so, in his handling of his principal informant, Gregory Scarpa, a Colombo Family member.[2] Much of this information was disclosed in August 1994 and May 1995,

---

[2] Because Agent DeVecchio oversaw many of the FBI agents who worked on the Colombo Family cases, his misdeeds with Scarpa have been the subject of numerous post-conviction motions and civil suits. See Sessa, 2011 WL 256330, at *10 (collecting cases).

when, under court order in a related case, federal prosecutors confirmed that Scarpa had been an FBI informant and that DeVecchio had leaked significant information to Scarpa about the FBI's investigation.

Scarpa had an extensive criminal background. He was a "made member" of the Colombo Family by the early 1980s, and he routinely engaged in credit card fraud, extortion, gambling, narcotics trafficking, and loansharking as the director of a Colombo Family crew in Brooklyn. By the time of the internal power struggle between the Persico and the Orena factions, Scarpa was an acting captain in the family that remained loyal to Persico. While Scarpa was DeVecchio's informant, Scarpa also participated in several murders and attempted murders of other members of the Family. Ultimately, on February 4, 1993, after the Defendant's conviction, Scarpa was indicted for his role in three murders, and in May 1993, he pleaded guilty and was sentenced to ten years' imprisonment. See New York v. DeVecchio, 468 F. Supp. 2d 448, 451 (E.D.N.Y. 2007).

Scarpa's status as a confidential informant for the FBI dated back to at least 1980. He provided the FBI with extensive information about the Colombo Family. In exchange for his information, the FBI paid Scarpa, and Scarpa expected leniency in the event that he was convicted.

Despite the fact that FBI regulations required two agent-handlers for each confidential informant, DeVecchio was Scarpa's sole handler

from 1980 until 1992. During that time DeVecchio shared information with Scarpa about the FBI's investigation of the Colombo Family. In addition, DeVecchio allowed Scarpa to remain a confidential informant despite the fact that DeVecchio knew that Scarpa was committing violent crimes.

By the time of the Defendant's trial in October 1992, the FBI had concerns about DeVecchio's handling of Scarpa, and the prosecutors knew that Scarpa was one of the FBI's confidential informants. But the FBI and the prosecutors did not know the extent of DeVecchio's misconduct. After several Colombo Family members agreed to cooperate with the Government in April 1993, the FBI learned of DeVecchio's misconduct, and in January 1994 federal prosecutors learned of some of DeVecchio's misconduct. Several months later the FBI shared information it had gathered in its internal investigation of DeVecchio with federal prosecutors.

In March 2006, a New York State grand jury indicted DeVecchio for second-degree murder. The charges were based on the fact that Scarpa used some of the information DeVecchio provided him to murder and arrange for the murders of rivals in the Colombo Family. The Kings County District Attorney withdrew the case against DeVecchio duing his trial.

NYPD reports concerning Coluccio's murder. After the trial, in addition to learning of DeVecchio's misconduct, the Defendant also gained access to NYPD reports on the investigation of Coluccio's

murder. These reports revealed the following information: (1) the NYPD had found a latent fingerprint from the car in which Coluccio's body was found and had compared it to approximately 50 people who were known associates of Coluccio, but had failed to find a match; (2) several witnesses interviewed by the NYPD had reported seeing Coluccio alive in the hours immediately after 8:00 p.m., the approximate time that Ambrosino testified that the Defendant shot Coluccio; and (3) a witness in Staten Island who saw the car in which Coluccio was shot had reported seeing only one man walk away from the car.

IV. The Defendant's Rule 33 Motion

On October 11, 1996, the Defendant filed his Rule 33 Motion seeking a new trial based on the information that he had obtained in the NYPD reports about the Coluccio murder and the information that came to light about DeVecchio's misconduct and Scarpa's role as a confidential informant. The Defendant alleged that the information that came to light after his conviction amounted to newly discovered evidence, that the prosecutor failed to disclose exculpatory material, and that the prosecutor presented perjured testimony from DeVecchio.

The District Court denied the motion in a thorough opinion. See Sessa, 2011 WL 256330. We will identify the District Court's reasoning, pertinent to the issues raised on appeal, in the course of discussing the Appellant's claims.

-8-

Discussion

This Court reviews the denial of a Rule 33 motion for a new trial for an abuse of discretion. See, e.g., United States v. Douglas, 525 F.3d 225, 245 (2d Cir. 2008). Factual findings are reviewed for clear error. See United States v. Imran, 964 F.2d 1313, 1318 (2d Cir. 1992). "While the trial judge's factual conclusions as to the effect of nondisclosure are ordinarily entitled to great weight," this Court conducts its own "independent examination of the record in determining whether the suppressed evidence is material." United States v. Payne, 63 F.3d 1200, 1209 (2d Cir. 1995) (citations and internal quotation marks omitted).

Sessa asserts three claims on appeal. He contends that (1) the NYPD police reports were newly discovered evidence that was exculpatory and should have been produced to the defense pursuant to Brady v. Maryland, 373 U.S. 83 (1963); (2) the Government failed to disclose an improper relationship between DeVecchio and Scarpa, also in violation of Brady; and (3) DeVecchio testified falsely at trial and that the Government either knew or should have known of the falsity, requiring disclosure of the falsity pursuant to United States v. Agurs, 427 U.S. 97, 103 (1976).

1. The NYPD police reports. Sessa contends that several aspects of the NYPD police reports would have been helpful to the defense. First, he argues that the reports would have provided a basis to impeach Ambrosino's testimony, especially concerning the time of the

-9-

murder of Coluccio, which Ambrosino had testified was 8 p.m. The reports indicated that the police had interviewed several people who claimed to have seen Coluccio alive between 8:40 and 10 p.m. on the night of the murder. The District Court properly determined that this information was not material exculpatory evidence. See Sessa 2011 WL 256330, at *23-*27. As evidence to impeach Ambrosino's credibility, it was cumulative of abundant other evidence. In addition, it was not material to the defense because the defense had argued to the jury that Ambrosino was truthfully testifying about all aspects of Coluccio's murder except the identity of the shooter, whom the defense claimed was Ambrosino himself. "[A]ny witness statements tending to contradict the time of the murder also contradict [Sessa's] defense, and accordingly, are not favorable to the defense for Brady purposes." Id. at *25 (citing Douglas, 525 F.3d at 247). Had the defense wished to dispute the time of the murder, it had the autopsy report that estimated the time of Coluccio's death at approximately midnight, four hours after Ambrosino said the murder occurred. Whatever discrepancies the NYPD report might have shown with respect to Ambrosino's testimony would not have affected Ambrosino's testimony that he and the Defendant murdered Coluccio; that the Defendant threw the gun, which was ultimately found by the FBI, into a storm drain; or that there was a motive to murder Coluccio because Colombo Family members believed that Coluccio was a vulnerable potential source for the Government as a result of his drug use.

-10-

Sessa also faults the Government for not disclosing that the NYPD had checked latent fingerprints from the car against the prints of a number of people, including Scarpa. But as the District Court pointed out, none of the comparisons yielded matches. See id. at *24. The fact that am unidentified person, at some point in the past, had been in Coluccio's car does not plausibly suggest that that person killed Coluccio. Nor does the fact that the authorities diligently pursued other leads but found no evidence implicating any other person tend to exculpate Sessa. Moreover, there is "no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case." Moore v. Illinois, 408 U.S. 786, 795 (1972).

Finally, Sessa claims that a NYPD report of an interview with Harry Ustler was Brady material. Ustler stated he had seen only one man walking away from a car parked where Ambrosino testified his car was parked. But, as the District Court pointed out, Ustler also said it was a rainy night and he lost sight of the man before he reached the end of the block. See Sessa, 2011 WL 256330, at *26. Ustler's statement could not "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." United States v. Jackson, 345 F.3d 59, 73 (2d Cir. 2003) (internal quotation marks omitted).

-11-

2. The DeVecchio/Scarpa relationship. It is not clear which aspects of DeVecchio's relationship with Scarpa the Appellant is claiming should have been disclosed. The argument seems to be that Scarpa's status as an informant should have been disclosed. The District Court properly ruled, however, that "the fact that Scarpa was in fact an informant could have been discovered by [Sessa] with due diligence." See Sessa, 2011 WL 256330, at *29. A newspaper article published prior to the trial had implicated Scarpa as an informant. Scarpa's informant status was not newly discovered evidence. The Court also properly ruled that disclosure of the DeVecchio/Scarpa relationship, regardless of how Sessa contends he could have used the information, would not have led to a different result at trial. See id. at *29-*33.

3. DeVecchio's false testimony. Sessa contends that DeVecchio testified falsely that he did not allow confidential informants under his supervision to commit crimes in the absence of his superiors' approval, and, even with such approval, did not allow informants to commit serious crimes. The Government does not dispute that DeVecchio testified falsely about such matters, but disputes that it knew or reasonably should have known at the time of trial that the testimony was false. However, as the District Court properly ruled, how DeVecchio dealt with his informants was "entirely immaterial to [Sessa's] conviction." Id. at *44 (citing United States v. Wong, 78 F.3d 73, 82 (2d Cir. 1996)). The Court also noted that DeVecchio had testified essentially on background matters and that "a [G]overnment

-12-

agent's perjury did not warrant a new trial where the 'testimony was of marginal significance' and the 'core of the evidence' came from a different witness." Id. (quoting United States v. Reyes, 49 F.3d 63, 68 (2d Cir. 1995)).  There simply was no "reasonable likelihood that the false testimony could have affected the judgment of the jury." Agurs, U.S. at 103.

## Conclusion

The District Court's Order denying the Appellant's Rule 33 motion is affirmed.