*United States v. Pippins*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of February, two thousand twenty-six.

PRESENT:
> BARRINGTON D. PARKER,
> SUSAN L. CARNEY,
> BETH ROBINSON,
> > *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

>*Appellee*,

> v.                                                             No. 25-154

MARVIN PIPPINS, AKA MUKK,

>*Defendant-Appellant*,

JEFFREY BUSH, TYSHAWN ATKINS, AKA BREEZE, INDIA LANE, AKA GORGEOUS GANGSTA, LOUIS LOVE, AKA SCOOBZ, AKA SCOOBIE, YONETTE RESPASS, AKA

YONETTE PESPASS, AKA YONETTE DAVIS, AKA STAR BRIM, JAMES SEASE, AKA CHOP WHOP, MONTEL SHUEMAKE, AKA BUZZO, RUDOLFO ZAMBRANO, AKA LATINN DINERO, JOSE BATTLE, AKA STRIZZ, NASIA BATTLE, AKA NAS, BRIAN JACKSON, AKA MAXX MILLII, AKA GRAPE,

     *Defendants.*[*]

_____

| | |
|---|---|
| FOR APPELLEE: | LINDSEY OKEN (Anthony Bagnuola, Dana Rehnquist, *on the brief*), Assistant United States Attorneys, *for* Joseph Nocella, Jr., United States Attorney for the Eastern District of New York, Brooklyn, NY. |
| FOR DEFENDANT-APPELLANT: | RICHARD WARE LEVITT (Zachary Segal, *on the brief*), Levitt & Kaizer, New York, NY. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Chen, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on January 14, 2025, is **AFFIRMED**.

---

[*] The Clerk's office is respectfully directed to amend the caption as reflected above.

Following a jury trial, Marvin Pippins was convicted of, among other things, racketeering conspiracy, conspiracy to commit murder in aid of racketeering, murder in aid of racketeering, and the unlawful use of firearms. At trial, he conceded that he shot and killed the victim, Sean Peart, but he argued that it was solely in retaliation for the death of his twin brother, Melvin (Melly) Pippins. On appeal, he challenges the sufficiency of the evidence to show his enterprise-related motivation, as well as the jury instructions, the exclusion of certain evidence, limits imposed on his summation, and the government's failure to disclose exculpatory evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision.

## I. Sufficiency of the Evidence

We review challenges to the sufficiency of the evidence without deference and will "uphold a conviction if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[1] *United States v. Dupree*, 870 F.3d 62, 78 (2d Cir. 2017). A defendant seeking to overturn a conviction on the ground that the evidence was insufficient "bears a heavy burden." *United*

---

[1] In quotations from caselaw, this summary order omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

*States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012).  In assessing the sufficiency of the evidence, we "view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence."  *United States v. Rosemond*, 841 F.3d 95, 113 (2d Cir. 2016).

To sustain Pippins' racketeering convictions, the evidence must establish that he killed Sean Peart and conspired to kill Peart or other members of Peart's gang, Real Ryte, "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity."  18 U.S.C. § 1959.  The enterprise purpose is satisfied where a defendant's "general purpose" in acting was to maintain or increase standing in the enterprise, but this need not be a defendant's "sole or principal motive."  *United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir. 1992); *United States v. Thai*, 29 F.3d 785, 817 (2d Cir. 1994).  That Pippins had a personal motive for committing these acts does not preclude conviction under § 1959 as long as he was likewise "motivated by a desire to increase or maintain his position" in the charged enterprise, the 5-9 Brims.  *United States v. White*, 7 F.4th 90, 101–02 (2d Cir. 2021).

4

A reasonable jury could have found the requisite enterprise purpose beyond a reasonable doubt. *See Dupree*, 870 F.3d at 78. Jurors heard testimony that both Pippins and his brother were members of the 5-9 Brims and that Pippins committed the murder as retaliation against members of a rival gang who he believed killed his brother in a gang-related response to his brother's own gang-related activity. Marcus Laborde, a former "Godfather" of the 5-9 Brims in Brooklyn and a cooperating government witness testified that after Melly was killed, 5-9 Brims members were expected to respond with "murder for murder," and that Pippins' reputation in the 5-9 Brims changed after Pippins killed Peart. Trial Transcript 519–20, Gov't App'x 230–31. Laborde also testified that he'd heard Pippins talk about "us[ing] a female to try to catch a Real Ryte," his victim's gang, because that was "the same tactic" used to "set Melly up." Trial Transcript 541–42, Gov't App'x 252–53.

In addition, another cooperating government witness, Khalif Watson, explained that a principle in the 5-9 Brims' code is to "fear no foe," and deal with rivals "accordingly," that is, "with violence." Trial Transcript 929–30, Gov't App'x 474–75. Watson testified that Pippins expressed an ongoing desire to hunt down Real Ryte members, even after Pippins shot Peart. Social media and electronic

evidence from other 5-9 Brims members indicated a credo of retaliation and vengeance against rival gangs as well.

From this evidence, taken together and in the light most favorable to the government, the jury could have inferred that Pippins "committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership," which is all the enterprise purpose requires. *Concepcion*, 983 F.2d at 381.

## II. Jury Instructions

We review challenges to jury instructions without deference, and "will reverse only where the charge, viewed as a whole, demonstrates prejudicial error." *United States v. Coppola*, 671 F.3d 220, 247 (2d Cir. 2012).

Pippins first argues that the district court erred in declining to instruct the jury that the enterprise motive for the murder had to be "substantial" or "integral" to his membership in the 5-9 Brims, and he contends that the jury charge invited the jury to convict even if the enterprise motive was incidental.

A defendant's enterprise purpose must be a "general" purpose of the defendant. *Concepcion*, 983 F.2d at 381. We have explained that the "general purpose" requirement is satisfied where a "reasonable jury could conclude that

6

[the defendant] committed [the] act in furtherance of, or as an integral aspect of, his role" with the criminal enterprise, *United States v. Arrington*, 941 F.3d 24, 38 (2d Cir. 2019), or where a jury could find that "maintaining or increasing his position in the enterprise" was "a substantial motivating factor in the defendant's decision to" do the act, *White*, 7 F.4th at 102.

Here, in providing an overview of the elements of the charge, the court first instructed the jury that Pippins could be guilty only if his "general purpose in committing the crime of violence was to maintain or increase his position in the enterprise." Trial Transcript 2120–21, Gov't App'x 1159–60. It went on to explain that:

> The fifth element requires the government to prove beyond a reasonable doubt that the defendant's general purpose in committing the crime of violence was to gain entrance to or maintain or increase his position in the enterprise. The government is not required to prove that it was the defendant's sole or principal motive. You need only find that it was one of his purposes.

Trial Transcript 2125, Gov't App'x 1164. The court then explained that because the jury could not "look into a person's mind," it should "consider all the facts and circumstances," such as considering Pippins' "association with, or position in the enterprise . . . at the time the alleged murder was committed, and the extent, if at all, the commission of the alleged crime served to help the defendant gain entrance

7

to or maintain, uphold or enhance his position" within the 5-9 Brims. *Id.* It concluded by cautioning the jury that it must acquit Pippins if it found that he "was not motivated at all by the desire to gain entrance to, or maintain or increase his position in, the enterprise, but was motivated only by other factors." *Id.* at 2126, Gov't App'x 1165.

Pippins contends that this last statement implies that if he was motivated even to a "vanishingly slight" degree by an enterprise purpose, the jury should convict. Appellant's Br. at 48. We doubt the instructions, when taken as a whole, allow the jury to convict Pippins on this count even if his enterprise motivation was incidental or insubstantial. But we conclude based on the trial record that any error arising from the statement that he must be acquitted if he was "not motivated at all" by an enterprise purpose was harmless. App'x 46; *United States v. Moran-Toala*, 726 F.3d 334, 344 (2d Cir. 2013) ("Instructional error is harmless only if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.").

We also reject Pippins' argument that the court erred by not giving a requested instruction on the relationship between Breadgang and the 5-9 Brims because we conclude that the theory was "effectively presented elsewhere in the

8

charge." *United States v. Kukushkin*, 61 F.4th 327, 332 (2d Cir. 2023). The district court gave clear instructions that the only charged enterprise was the 5-9 Brims, and Pippins was able to argue that Breadgang was entirely distinct from the 5-9 Brims and that he was motivated solely by a loyalty to his brother or to Breadgang, and not the 5-9 Brims.

## III. Exclusion of Evidence

Pippins challenges the district court's exclusion of a recorded jail call between Khalif Watson and his girlfriend. We review evidentiary rulings for abuse of discretion, and we are highly deferential to the district court in recognition of its "superior position to assess relevancy and to weigh the probative value of evidence against its potential for unfair prejudice." *Coppola*, 671 F.3d at 244.

The excluded material is hard to hear, confusing, and frequently unintelligible. The conversation, purportedly offered to show that Watson suffered from mental illness that undermined his credibility, took place years before Watson testified at trial, and years after the events he described in his testimony. Thus, the district court did not abuse its discretion in deciding that the tape was neither relevant nor probative, and that it would be unduly confusing to

the jury. We need not reach defendant's argument that the statements were not hearsay, as evidence that might be admissible under a hearsay exception may nevertheless be excluded under Federal Rule of Evidence 403. *United States v. Dhinsa*, 243 F.3d 635, 655–56 (2d Cir. 2001).

## IV. Defense Summation

We also disagree with Pippins' argument that the district court abused its discretion in interrupting his closing argument and precluding him from arguing that the government was "sneaky" in trying to "train" the jury to associate Breadgang with the 5-9 Brims through the use of the term "5-9 Brims of Marlboro." Trial Transcript 1919–20, Gov't App'x 1089–90. "A district court has broad discretion in limiting the scope of summation, and a court's decision to limit the scope of summation will not be overturned absent an abuse of discretion." *United States v. Lee*, 834 F.3d 145, 161 (2d Cir. 2016).

Though lawyers are sometimes given leeway, erroneously or not, to make somewhat inflammatory comments about opposing counsel, the Supreme Court has instructed district courts not to allow such mudslinging. *United States v. Young*, 470 U.S. 1, 9 (1985) ("Defense counsel, like [the government], must not be permitted to make unfounded and inflammatory attacks on the opposing

10

advocate."). The court acted within its discretion in prohibiting Pippins from accusing the government of "training" the jury. Trial Transcript 1926, Gov't App'x 1096.

## V. *Brady* Challenge

We review without deference to the district court Pippins' contention that the government here violated his *Brady* rights. *United States v. Mahaffy*, 693 F.3d 113, 127 (2d Cir. 2012). To establish a *Brady* violation, Pippins must show that: (1) the undisclosed evidence was favorable to him; (2) the evidence was in the state's possession and was suppressed, even if inadvertently; and (3) the defendant was prejudiced as a result of the failure to disclose. *See Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Evidence is material if the withheld evidence "reasonably undermines confidence in the verdict," and "the existence of substantial independent evidence of guilt is unavoidably relevant to whether withheld impeachment evidence can reasonably call the jury's verdict into question." *United States v. Orena*, 145 F.3d 551, 558 (2d Cir. 1998). Undisclosed impeachment evidence is not material for *Brady* purposes, and thus a new trial is not required, "when the suppressed impeachment evidence merely furnishes an

additional basis on which to impeach a witness whose credibility has already been shown to be questionable." *United States v. Wong*, 78 F.3d 73, 79 (2d Cir. 1996).

Here, Pippins contends that his rights under *Brady* were violated because the government failed to turn over recordings of more than 600 of Laborde's telephone calls from jail and more than 6,000 pages of his emails. Pippins argues that in particular two prison calls between Laborde and his wife are material under *Brady*. In the first, in the context of discussing his potential cooperation with the government, Laborde tells his wife that the government specifically wants Pippins. In the second, Laborde comments that the government wants him to say that his fellow gang members are "murderers" or are "shooting guns, but that is really not the . . . case." App'x 148 at 7:47–7:53. He laments that he might not "have enough," *id.* at 8:14–8:18, but that if "they were to get convictions off some real hardcore [charges] there'd be . . . time served." *Id.* at 9:27–9:33. After explaining that initially he lied to the government but then he decided to tell the truth, he said that he started telling the government "everything," but his fellow gang members were "only drug dealers." *Id.* at 10:06–10:30.

Though this evidence impeaches Laborde, it is not material on the record before us. Laborde's credibility had already been substantially undermined

12

through other impeachment evidence at trial.  And we are not persuaded that the likely additional impact on Laborde's credibility "would have undermined a critical element of the" case against Pippins in light of the other evidence of his guilt. *Wong*, 78 F.3d at 79.  Pippins conceded that he killed Peart, and even without Laborde's testimony, other evidence sufficed to show that Pippins acted with the necessary enterprise purpose.  In addition to the evidence discussed above in our review of Pippins' challenge to the sufficiency of the evidence, Pippins himself testified that he sought vengeance against the Real Rytes and that they "deserved what Melly got."  Trial Transcript 1680, Gov't App'x 943.

* * *

For the above reasons, the district court's judgment is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

13