**UNITED STATES of America, Appellee,**

v.

**Lee ALEXANDER,
Defendant–Appellant.**

**No. 48, Docket 88–1158.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 6, 1988.
Decided Oct. 17, 1988.

---

**17.** *See supra* note 14.

Paula Ryan Conan, Asst. U.S. Atty., Syracuse, N.Y. (Frederick J. Scullin, Jr., U.S. Atty. for N.D.N.Y., Syracuse, N.Y., on the brief), for appellee.

Harold J. Boreanaz, Buffalo, N.Y. (Boreanaz, Baker & Humann, Buffalo, N.Y., on the brief), for defendant-appellant.

Before VAN GRAAFEILAND and KEARSE, Circuit Judges, and POLLACK, District Judge.*

KEARSE, Circuit Judge:

Defendant Lee Alexander appeals from a judgment entered in the United States District Court for the Northern District of New York, Thomas J. McAvoy, *Judge*, following Alexander's plea of guilty to one count of participating in the affairs of an enterprise through a pattern of racketeering activity, in violation of the Racketeer

---

* Honorable Milton Pollack, Senior Judge of the United States District Court for the Southern District of New York, sitting by designation.

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d) (1982) (but see Part II.C. below) and 18 U.S.C. § 2 (1982) (count 2); one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (1982) (count 3); and one count of income tax evasion, in violation of 26 U.S.C. § 7201 (1982) (count 39). Alexander was sentenced to prison terms of 10 years on the RICO count, five years on the conspiracy count, and five years on the tax evasion count, all terms to run concurrently, and was ordered to pay partial restitution of $100,000 and special assessments totaling $150. On appeal, he urges that his sentence be vacated and the matter remanded for resentencing before another judge on the grounds that (1) he was denied adequate time to prepare his response to the government's sentencing position, and (2) the minutes of the grand jury that indicted him were improperly made public. Although we are troubled by the public disclosure of the grand jury minutes, we find no basis for vacation of the sentence, and we therefore affirm the judgment.

## I. BACKGROUND

Alexander served as mayor of the City of Syracuse, New York ("City"), from 1970 to 1986. In July 1987, a special grand jury returned a 40–count indictment against him and one Kenyon Bajus, alleging, *inter alia*, that during his terms as mayor, Alexander had engaged in widespread illegal activities, including demanding and receiving more than $1.4 million worth of bearer bonds, gold and silver coins, and cash, as kickbacks on City-related contracts with architects, attorneys, and insurance agencies. In January 1988, after pretrial motions and discovery, Alexander entered into a written plea agreement pursuant to which he, *inter alia*, agreed to plead guilty to counts 2, 3, and 39 of the indictment and "admit[ted] that if the case had gone to trial the Government would have produced evidence sufficient to allow a finder of facts to conclude that the Government had proved, beyond a reasonable doubt, all of the facts set forth in [those counts]." In the plea agreement, Alexander expressly admitted that he had "received kickbacks generated

as a result of his conduct of the affairs of the City of Syracuse," that he had "attempted to conceal his activity through a cover-up scheme," and that he had "willfully attempted to evade the payment of taxes during the calendar year 1985." For its part of the plea bargain, the government agreed to move for dismissal of the other charges and agreed that concurrent terms of incarceration of not more than 10 years, and fines totaling not more than $100,000, would constitute an appropriate sentence.

Alexander was originally scheduled to be sentenced on February 19, 1988; on February 3, sentencing was adjourned to March 10. Bajus and eight other alleged coconspirators were scheduled to be sentenced on the same day as Alexander. The eight had cooperated in the government's investigation and had, in July 1987, pleaded guilty to various crimes pursuant to plea bargains that required them to testify against Alexander if called upon to do so by the government.

On February 10, the government moved *ex parte* for an order pursuant to Fed.R. Crim.P. 6(e)(3)(C)(i) allowing it to "disclose those matters occurring before the Special Grand Jury empanelled on November 7, 1985, which are, in the opinion of the United States Attorney, relevant to the court's sentencing determination." On the same day, the court granted the motion, stating that the government "may hereafter disclose, for the purposes of sentencing," all grand jury matters referred to in the motion.

On February 26, the government filed sentencing memoranda relating to Alexander and the other nine who were to be sentenced, together with five appendix volumes of factual materials. Appendix volume I summarized the government's case against all ten; the remaining volumes comprised some 2,000 pages of material, including partial transcripts of testimony given by 27 witnesses before the grand jury. Two sets of appendix volumes II–V were filed with the clerk of the district court; they were not filed under seal and were available to the public. Members of the press and any others who were inter-

ested were allowed to take one set of the filed appendices to their offices or elsewhere for copying. Apparently, for some days thereafter local newspapers serialized the testimony of a number of named witnesses and printed quotations from the filed transcripts.

On March 8, Alexander submitted his sentencing memorandum, which included a 20–page section entitled "Reply to the Government's Sentencing Memorandum." This section controverted certain of the government's contentions, making references to the testimony of several grand jury witnesses. On the same day, Alexander, joined by the government, moved for an adjournment of the sentencing date. The court granted the motion and rescheduled the sentencing for March 24, 1988.

On March 23, Alexander's attorney telephoned the court, unsuccessfully requesting another adjournment of the sentencing. There appears to be no record of this application other than counsel's description of it at the start of the March 24 sentencing hearing. From that description, however, it appears that Alexander sought an adjournment on the ground that he wanted additional time to oppose the government's sentencing position. Thus, on March 24, counsel stated as follows:

> I indeed, Your Honor, have just completed yesterday the reading of the some 2000–odd pages of material that was incorporated here by reference. I have not had the opportunity to have access to the totality of the Grand Jury testimony, particularly in those instances where what was presented to the Court was abstracted. These things might well have had an impact or an effect upon Your Honor's sentencing function had I had an opportunity to address those matters, application would have been appropriate to compel the Government to disclose, at least to Counsel for the Defendant, the remainder of all of the Grand Jury testimony that they abstracted out of materials that they chose to present.
>
> Now, all of that is meaningless at this point for the reason that I have not been afforded the opportunity to get into these matters. I shall not be afforded the opportunity to get into these matters. These are the reasons why I applied to Your Honor, at least the reasons in part, why I applied to Your Honor yesterday to adjourn these proceedings....

At the March 24 sentencing hearing, Alexander also protested the public disclosure of the grand jury materials filed in the government's appendices II–V. He argued that the publication of grand jury testimony in the media had "polluted [the] atmosphere" to such an extent that Alexander could not get "an even-handed disposition" of his case. He therefore moved to strike all reference to the grand jury materials from the pre-sentencing report prepared for the court by the probation service. That motion too was denied.

The court sentenced Alexander to 10 years' imprisonment on the RICO count, and five years' imprisonment on each of the two other counts, all to be served concurrently. In addition, it ordered Alexander to pay $100,000 in restitution to the City and to pay special assessments totaling $150. Judgment was entered, and this appeal followed.

## II. DISCUSSION

On appeal, Alexander contends that his due process rights were violated because he was not given a fair opportunity to rebut the government's sentencing position and because the publication of the grand jury testimony deprived him of his right to a fair sentencing. For the reasons below, we affirm the judgment.

### A. *Opportunity To Respond*

■ It is clear that a defendant in a criminal case is entitled to due process in all phases of the prosecution, including sentencing. *See, e.g., Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). Due process requires that the defendant not be sentenced on the basis of materially false information, *id.* at 741, 68 S.Ct. at 1255, and he is thus entitled to an effective opportunity to respond to the sentencing posi-

tion advanced by the government, *see, e.g., United States v. Romano,* 825 F.2d 725, 728 (2d Cir.1987); *United States v. Lee,* 818 F.2d 1052, 1056 (2d Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 350, 98 L.Ed.2d 376 (1987), including an opportunity to review and comment upon the presentence report prepared by the probation office of the court, *see* Fed.R.Crim.P. 32.

■ It is also beyond dispute that the sentencing court has discretion with regard to the scheduling of the sentencing proceedings. *See United States v. Bernstein,* 417 F.2d 641, 643 (2d Cir.1969); *United States v. Costello,* 760 F.2d 1123, 1129 (11th Cir.1985). We will not vacate a sentence on the ground that the court has denied a continuance of the sentencing date unless the defendant shows that the denial was arbitrary and that it substantially impaired his opportunity to secure a fair sentence. Alexander has not made such a showing.

■ The government filed its 15–page sentencing memorandum and the 2,000–page supporting appendices on February 26, 1988. On March 8, Alexander filed his 44–page responding memorandum, devoting about half of it to his responses to the government's position. The record does not reveal that between those two dates Alexander made any request for additional time in which to respond to the government's assertions.

On March 8, Alexander, joined by the government, sought and obtained adjournment of the date for sentencing; but it does not appear that Alexander sought more time to respond to the government's sentencing position or complained of any lack of opportunity to respond. Though the parties also attended a status conference with the court on March 11, the record does not indicate that Alexander there made any statement to the court indicating that he had had insufficient time to respond.

The first indication in the record of any application by Alexander to the court for more time to respond to the government's sentencing position is in counsel's March 24 description of his March 23 telephone call to the court. As detailed in Part I above, Alexander apparently asked for more time in order to seek disclosure of all grand jury materials, so that his counsel could search for ammunition to counter the government's positions; the record does not indicate that this application suggested any particular respect in which Alexander thought the government's materials were false or misleading.

In sum, Alexander never made a formal application for additional time to respond; he filed his responding memorandum— which took issue with some of the government's assertions—without even an informal request for more time to respond; his only request for more time to respond was made more than two weeks after his response was filed and just one day before the hearing was to occur. And even this belated request did not point to any respect in which Alexander contended that materials in the sentencing appendices were false or misleading.

Finally, we note that even in this Court, Alexander has not charged that any statements in the government's materials other than those challenged in his March 8 memorandum were false or misleading. In light of the record, we can hardly conclude that the district court's adherence to the March 24 sentencing date was arbitrary or that Alexander was prejudiced by it.

**B.** *Publication of the Grand Jury Materials*

To the extent pertinent here, Fed.R.Crim. P. 6(e)(2), which sets forth the "General Rule of Secrecy" of grand jury matters, states that, "except as otherwise provided for in these rules," a government attorney "shall not disclose matters occurring before the grand jury." A knowing violation of this restriction "may be punished as a contempt of court." *Id.*

■ One exception provided by the Rule is that disclosure may be made "when so directed by a court preliminarily to or in connection with a judicial proceeding." Fed.R.Crim.P. 6(e)(3)(C)(i). For purposes of sentencing, which of course is part of a

judicial proceeding, the court is virtually unfettered with respect to the information it may consider. *See, e.g., Williams v. New York*, 337 U.S. at 246–50, 69 S.Ct. at 1082–85; *United States v. Romano*, 825 F.2d at 728; 18 U.S.C.A. § 3661 (West 1985) (18 U.S.C. § 3577 (1982), renumbered as § 3661, *see* Pub.L. No. 98–473, § 212(a)(1), 98 Stat. 1987 (1984), effective Nov. 1, 1987, *see* Pub.L. No. 99–217, § 4, 99 Stat. 1728 (1985)). Thus, the court may appropriately authorize the government to disclose to it grand jury materials for its use in considering what sentence to impose. In the present case, the government's desire to reveal to the court grand jury materials suggesting crimes by Alexander other than those to which he pleaded guilty or showing that certain of Alexander's coconspirators had given the government substantial cooperation that should be taken into account with respect to their sentences, provided ample reason for the court to direct disclosure of the grand jury materials to the court.

Alexander does not contend that the court was not entitled to consider grand jury materials in connection with sentencing; nor does he suggest that he was not allowed to see all of the materials that were placed before the court. Rather, he contends that the grand jury materials should not have been disclosed to the public; that the public disclosure generated adverse publicity, including an editorial quoted by the prosecutor at the sentencing hearing; and that this publicity tainted the sentencing atmosphere. While we agree that the disclosure to the public was inappropriate, we are unable to conclude that it prejudiced Alexander in sentencing.

### 1. *Limitations on Disclosure*

█ The Supreme Court has repeatedly emphasized that the general rule of grand jury secrecy serves several important functions:

> We consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.... In particular, we have noted several distinct interests served by safeguarding the confidentiali-

ty of grand jury proceedings. First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

*Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218–19, 99 S.Ct. 1667, 1672–73, 60 L.Ed.2d 156 (1979) (*"Douglas Oil"*) (footnotes omitted). Given these concerns, disclosure is warranted only when the need for it outweighs society's interest in secrecy.

█ The weighing of the competing concerns should be a closely focused inquiry. The mere fact that disclosure to one person for a stated purpose may be warranted does not mean that wholesale disclosure should be permitted to the public at large. A party moving for a relaxation of the normal rule of secrecy should structure its request to cover only material that is needed. The court should require that the showing of need be made " 'with particularity' so that 'the secrecy of the proceedings [may] be lifted discretely and limitedly.' " *Id.* at 221, 99 S.Ct. at 1674 (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 683, 78 S.Ct. 983, 987, 2 L.Ed.2d 1077 (1958)); *see* Fed.R.Crim.P. 6(e)(3)(C) ("If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct.").

█ While Rule 6(e) accords the court substantial discretion to determine whether the need for disclosure outweighs the socie-

tal interest in secrecy, and while we have no difficulty in the present case with so much of the order as allowed disclosure to the court for use in sentencing, we see no indication in the record that the district court even considered limiting its authorization of disclosure to fit that need. The government's motion, sketchy even as to the reasons for the government's desire to disclose the materials to the court, was entirely silent as to whether or why disclosure should extend to the public. The court should have realized that the government, while mentioning the sentencing need, had neither demonstrated any need for a public filing nor suggested that the materials would be filed *in camera* or under seal; the court should thus have recognized that an endorsement of the government's motion *in haec verba* would authorize disclosure that was far broader than the demonstrated need.

The present record could not by any stretch of the imagination justify a conclusion that the interests in secrecy were outweighed by a need for public filing. While certain of the *Douglas Oil* factors would appear to have dwindled in significance, others retained their importance. Thus, while there was no longer any risk here of grand jury tampering and perhaps little risk of witnesses fearing retribution, the court should have considered "not only the immediate effects upon [this] particular grand jury, but also the possible effect upon the functioning of future grand juries." *Douglas Oil*, 441 U.S. at 222, 99 S.Ct. at 1674. If grand jury proceedings may be made public for no stated reason at all, public confidence in grand jury secrecy cannot help but be eroded, and prospective witnesses will undoubtedly be more hesitant to come forward to testify.

■ We are not persuaded by the government's argument that unlimited public disclosure was permissible on the theory that the government is entitled to disclose grand jury materials in open court during sentencing proceedings even without court authorization. We reject the government's premise. Rule 6 confers no such privilege; nor are we aware of any need for the government to place grand jury materials in the open record in connection with such proceedings. With respect to sentencing, as contrasted with determinations of the defendant's guilt, there is no requirement that the court consider only evidence adduced in open court. *See, e.g., Williams v. New York*, 337 U.S. at 250–51, 69 S.Ct. at 1084–85. Thus, we see no reason why the government cannot state its sentencing position in open court in terms that do not reveal matters that occurred before the grand jury, furnishing the supporting grand jury material to the court in a sealed filing. This would parallel the treatment given to presentence reports prepared by the federal probation office. Such reports are used by the court in sentencing; but they are not part of the public record, and they are unavailable to persons other than the court, the parties, and the probation office, except on a showing of compelling need. *See generally United States v. Charmer Industries*, 711 F.2d 1164 (2d Cir.1983); Fed.R.Crim.P. 32(c). Similar treatment of grand jury materials would reflect an appropriate balancing of the limited need for disclosure and the societal interest in grand jury secrecy.

We conclude that the government's motion for permission to disclose was improperly broad and that the court's granting of that motion without limitation was an abuse of discretion.

### 2. Prejudice in Sentencing

■ Notwithstanding our disapproval of the unrestricted disclosure of the grand jury materials, we see nothing in the record to indicate that the public filing infringed Alexander's right to a fair sentencing. We note that the sentence actually imposed on Alexander was within the limits for which he had bargained. More importantly, the materials that were publicly filed would have been before the court in any event, and there does not appear to have been any material before the court that should not have been before the court.

Alexander's attempt to attribute the adverse publicity preceding his sentencing to the government's disclosure of the grand

jury minutes is entirely unpersuasive. The investigation and prosecution of Alexander had already generated considerable public criticism. Indeed, prior to Alexander's plea of guilty, the court had ordered a change of venue for trial in recognition of the "substantial pretrial publicity." The indictment was explicit and detailed in its allegations of Alexander's wrongdoing. Count 2, for example, charged that Alexander had engaged in a pattern of racketeering activity including the extortion of money and securities and the acceptance of bribes, with the understanding that the payment of such moneys would influence his decisions as mayor. This count set forth dates, names of payers, and names of bagmen, and detailed numerous City-related projects from 1970 through 1985 in which there were 65 instances of kickbacks to Alexander in amounts as high as $207,178 and totaling more than $1,435,000. The indictment was a matter of public record; Alexander's plea of guilty to counts 2, 3, and 39 was a matter of public record; and the plea agreement, in which Alexander explicitly admitted that the government could prove all of the factual allegations in these counts beyond a reasonable doubt, was a matter of public record. There was obviously ample grist for the editorial mills without the grand jury materials.

In sum, the record does not indicate that the sentencing court considered any inappropriate materials or that the publication of the grand jury materials had any improper effect on sentencing.

C. *Need To Correct Judgment*

Finally we note one clerical matter not adverted to by the parties. The indictment included two RICO counts; count 1 charged Alexander with a RICO conspiracy, in violation of 18 U.S.C. § 1962(d), and count 2 charged a substantive RICO offense, in violation of 18 U.S.C. § 1962(c) (1982). The plea agreement, however, in recounting the charges set forth in the indictment, reversed these two sections. Thus, the agreement recited that Alexander's alleged conspiratorial activities (count 1) violated the substantive section, § 1962(c), and that Alexander's participation in a RICO enterprise (count 2) violated the conspiracy section, § 1962(d).

Alexander's plea and the judgment of conviction followed the recital set forth in the plea agreement rather than the terms of the indictment. Since the plea agreement and other parts of the record make it clear that Alexander intended to plead guilty to count 2 and nowhere indicated a willingness to plead guilty to RICO conspiracy, and since the conspiracy count of the indictment has been dismissed, the references to § 1962(d) in the agreement and the judgment appear to be clerical errors that may be corrected at any time, *see* Fed.R. Crim.P. 36. Our affirmance of the judgment does not foreclose such a correction.

### CONCLUSION

Consistent with the foregoing, the judgment of conviction is affirmed.