**UNITED STATES of America, Plaintiff,**

v.

**Jose REYES, Francisco Medina, and Thomas Rodriguez, Defendants.**

No. S3 94 CR 872 (SAS).

United States District Court,
S.D. New York.

March 29, 1996.

---

Bruce G. Ohr, Thomas A. Arena, Assistant United States Attorney, S.D.N.Y., New York City, for Plaintiff, United States.

Diarmuid White, New York City and Don D. Buchwald, Buchwald & Kaufman, New York City, for Defendant Jose Reyes.

Lee Ginsberg, Freeman, Nooter & Ginsberg, New York City, for Defendant Thomas Rodriguez.

## *OPINION AND ORDER*

SCHEINDLIN, District Judge.

### I. *Introduction*

Defendant Jose Reyes has requested that the Court inspect the attendance and voting records of the grand jury that returned the third superseding indictment in this case. Reyes makes this request based on information provided to him by the Jury Administrator indicating that "ten of the jurors sitting on the special grand jury which returned the instant indictment were not members of the special grand jury which returned the preceding two indictments." Memorandum in Support of Defendant Reyes' Pretrial Motions on Third Superseding Indictment and in Opposition to Government's Motion for an Anonymous Jury ("Def.Mem.") at 33; *see also* Affirmation of Diarmuid White, Attorney for Reyes ("White Aff."), dated March 4, 1996, Ex. B. According to Reyes, this information "raises the prospect that some of the minimum of 12 grand jurors who voted for this indictment did not hear all of the evidence on which it was based." Def.Mem. at 33.

### II. *Standard*

■ As Reyes points out, Rule 12(b)(1) of the Federal Rules of Criminal Procedure ("Fed.R.Crim.P.") allows a defendant in a criminal prosecution to move to dismiss the indictment "based on defects in the institution of the prosecution." Moreover, the Court is empowered to inquire whether the grand jury's function in this case was undermined by irregularities occurring before that body, although "as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v. United States,* 487 U.S. 250, 254, 108 S.Ct. 2369, 2373, 101 L.Ed.2d 228 (1988). That case noted that dismissal of an indictment is appropriate where "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair." *Id.* at 257, 108 S.Ct. at 2374.

■ However, the Government correctly notes that grand jury proceedings carry a "presumption of regularity." *United States v. Torres,* 901 F.2d 205, 233 (2d Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990) (quoting *Hamling v. United States,* 418 U.S. 87, 139 n. 23, 94 S.Ct. 2887, 2918 n. 23, 41 L.Ed.2d 590 (1974)). Under Fed.R.Crim.P. 6(e)(3)(C)(ii), matters occurring before a grand jury may not be disclosed unless a defendant shows "that grounds may exist for a motion to dismiss the indictment because of" those matters. Further, inspection of grand jury minutes by a district court is inappropriate unless the defendant shows a particularized need (*see United States v. Wong,* 78 F.3d 73, 83 (2d Cir.1996); *United States v. Alexander,* 860 F.2d 508, 513 (2d Cir.1988)) or makes specific factual allegations of governmental misconduct (*see Torres,* 901 F.2d at 233).

### III. *Discussion*

■ As an initial matter, I note that Reyes has not requested that I inspect the grand jury *minutes*—that is, the transcript of grand jury proceedings. Reyes actually asked the Court to inspect the grand jury's attendance and voting records. Def.Mem. at 33; *see also* Letter of Diarmuid White dated March 24, 1996 ("White Letter") at 2 n. 1 ("[D]efendant does not seek the *substance* of any grand jury proceedings, nor is he requesting 'the minutes' as the Government puts it") (emphasis in original). With that in mind, I turn to the merits of Defendant's request.

In opposing Reyes' request, the Government notes that a motion for inspection of grand jury minutes may not be granted on the basis of "speculation and surmise as to what occurred before the grand jury," because such speculation "is not a substitute for fact." *United States v. Wilson*, 565 F.Supp. 1416, 1436 (S.D.N.Y.1983). The Government is correct. But Reyes has not asked for an inspection of the *minutes*, and Reyes' argument goes beyond "speculation and surmise." He has shown a particularized need by producing documents from the Jury Administrator showing that ten members of the special grand jury which returned the instant indictment were not members of this grand jury at the time it voted the original indictment and the first and second superseding indictments. As Defendant explains, this is a specific factual allegation that raises the prospect of governmental misconduct:

It is quite possible that the Government, in obtaining

the instant indictment, *read* to the grand jurors the previous indictment, or simply told them that the defendants had already been indicted on the pre-existing counts, and then presented evidence *only* regarding the newly charged crimes.

White Letter at 1.

Two other cases on which the Government relies do not compel a denial of Reyes' request. In *United States v. Colasurdo*, 453 F.2d 585 (2d Cir.1971), *cert. denied*, 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116 (1972), the Second Circuit rejected a claim by defendants "that they should have been permitted to inspect the grand jury attendance records to determine whether '12 or more jurors' ... were sufficiently in attendance when evidence to support each of the '233 decisions,' involving 11 defendants and 45 counts, was made by the grand jury." *Id.* at 596. However, the facts of *Colasurdo* differ from those of the instant case. In *Colasurdo*, there was no specific allegation that certain jurors were not members of the in-

dicting grand jury at some point during the presentation of evidence. Rather, it appears that the defendants' request in that case was aimed generally at confirming the Government's compliance with the twelve-juror minimum requirement set forth in Fed. R.Crim.P. 6(f). By contrast, Reyes' request addresses a superseding indictment returned by grand jurors who were not even members of the grand jury that returned the preceding indictments. This difference is significant because the existence of prior indictments may, as Reyes suggests, have tempted the Government simply to read the prior indictment(s) to the new jurors or to inform them that the prior indictments were returned. The fact that as many as ten jurors here were new further supports Reyes' contention that *Colasurdo* is not controlling. For the same reasons, the Government's citation of *United States ex rel. McCann v. Thompson*, 144 F.2d 604 (2d Cir. 1944), is not persuasive.

IV. *Conclusion*

Consequently, Reyes' request is granted. The Government is ordered to produce the attendance and voting records of the grand jury that returned the third superseding indictment to the Court by April 2, 1996 for an *in camera* inspection. However, the inquiry will end only if the inspection reveals that at least 12 of the jurors who were present on February 7, 1996 (the day the third superseding indictment was returned) were also members of the grand jury on or before December 19, 1994 (the day the first superseding indictment was returned).[1] If my inspection of the records reveals otherwise, then I must examine the minutes of the grand jury proceedings from December 19, 1994 to February 7, 1996 in order to determine whether evidence supporting the charges contained in the original and first superseding indictments was in any way pre-

---

1. The original indictment was returned on November 16, 1994, and charged a continuing criminal enterprise and drug distribution. The first superseding indictment added RICO charges, as well as charges of seven murders and drug distribution (as RICO predicate acts). The second superseding indictment (returned on January 25, 1995) contained no new charges. The third superseding indictment charged 10 additional murders.

sented to the new jurors who voted for the third superseding indictment.[2]

SO ORDERED.

2. In lieu of an examination I would accept a representation from the Government that the evidence supporting the original charges was made available to the new jurors.