BANK BRUSSELS LAMBERT,
et al., Plaintiffs,

v.

THE CHASE MANHATTAN BANK,
N.A., et al, Defendants and
Third–Party Plaintiffs,

THE CHASE MANHATTAN BANK,
N.A., et al., Plaintiffs,

v.

ERNST & YOUNG, a Partnership,
et al., Defendants.

BANK BRUSSELS LAMBERT,
et al., Plaintiffs,

v.

BANQUE PARIBAS (SUISSE)
S.A., et al., Defendants,

BANK BRUSSELS LAMBERT,
et al., Plaintiffs,

v.

CREDIT LYONNAIS (SUISSE)
S.A., et al., Defendants.

Nos. 93Civ.5298(LMM)(RLE),
93Civ.8270(LMM)(RLE),
94Civ.1317(LMM)(RLE),
93Civ.6876(LMM)(RLE).

United States District Court,
S.D. New York.

July 7, 1997.

Lance Gotthoffer, Oppenheimer Wolff & Donnelly, New York City, for Plaintiffs.

Ronald S. Rauchberg, Proskauser Rose Goetz & Mendelsohn, New York City, for Defendants.

ELLIS, United States Magistrate Judge.

Before the court is a motion by Credit Lyonnais (Suisse) ("CLS") to compel the

United States Government, specifically the Department of Justice ("DOJ"), to produce transcripts of grand jury testimony that occurred during the criminal investigation in *United States v. Harris,* No. 92 Cr. 455(CSH) (S.D.N.Y.). The Government asserts that CLS is not entitled to the transcripts because it has not shown a particularized need as required under Federal Rule of Criminal Procedure 6(e). For the reasons which follow, CLS's motion is denied.

## I. BACKGROUND

On September 19, 1995, CLS served subpoenas requesting, among other items, the written, recorded, or transcribed statements taken by the DOJ or the FBI in connection with the investigation or prosecution of Roy William Harris, V.J. Dispenza, AroChem Corp. and AroChem International, Inc. (together "AroChem"), and AroChem International, Ltd. ("AIL"). On January 11, 1996, Magistrate Judge Francis signed a proposed order agreed upon by the parties which required the Government to produce all documents and materials in its possession responsive to the subpoenas, except those for which the Government claimed a privilege. Judge Francis specifically ordered the Government to produce the transcripts of grand jury testimony in the Harris prosecution of eight specified witnesses and to produce responsive documents and materials related to matters before the grand jury. However, Judge Francis ruled the Government was not required to produce the transcripts of the grand jury testimony of other witnesses until further order of the court.

According to CLS, however, while the Government did produce the sought after documents in possession of the FBI, they did not release the documents held by the DOJ. On April 19, 1996, CLS filed this motion to compel production of the testimony and materials it claimed were missing. The motion came before me after all discovery matters of the related cases—93 Civ. 5298, 93 Civ. 8270, 94 Civ. 1317, and 93 Civ. 6876—had been consolidated. At a pre-trial conference on September 17, 1996, I denied CLS's motion on the ground it had not shown a particularized need for the grand jury testimony. However-

er, I permitted CLS to resubmit a more narrowly tailored motion indicating exactly which witnesses' testimony it needed and why. On January 21, 1997, CLS submitted its motion for reconsideration seeking the grand jury testimony of Christine Broderick, Gene Sebastian, Joe Shephard, Maria Agovino, and Craig Poler. On March 22, 1997, the Government filed its response.

## II. DISCUSSION

As a general rule, the secrecy of grand jury testimony is protected. Fed.R.Crim.P. 6(e)(2). It has been repeatedly emphasized that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings," even after the grand jury has ended its activities. *Douglas Oil Co. of California v. Petrol Stops Northwest,* 441 U.S. 211, 218, 99 S.Ct. 1667, 1672, 60 L.Ed.2d 156 (1979). In *Douglas Oil,* the Supreme Court noted several dangers posed to the public by not safeguarding the confidentiality of grand jury proceedings: persons accused but exonerated might be held up to public ridicule; those about to be indicted might try to flee or influence individual grand jurors; and witnesses might hesitate to come forward voluntarily or to testify fully and frankly, knowing that those against whom they testify might one day learn about the testimony and take revenge. *Id.* at 219, 99 S.Ct. at 1673. This concern would be particularly heightened "where the witness is an employee of a company under investigation." *Id.*

"At the same time it has been recognized that in some situations justice may demand that discrete portions of transcripts be made available for use in subsequent proceedings." *Id.* Accordingly, disclosure may be made where so ordered by a court in a judicial proceeding. Fed.R.Crim.P. 6(e)(3)(c)(i). Such an order is appropriate only upon a "strong showing of a particularized need" for the information requested. *United States v. Sells Engineering,* 463 U.S. 418, 443, 103 S.Ct. 3133, 3148, 77 L.Ed.2d 743 (1983). The Supreme Court test for establishing a particularized need was set forth in *Douglas Oil,* 441 U.S. at 222, 99 S.Ct. at 1674, requiring that: a) the material sought

is necessary to avoid a possible injustice; b) the need for disclosure is greater than the need for secrecy; and c) that the request is structured to cover only the material so needed. The standard "is a highly flexible one adaptable to different circumstances and sensitive to the fact that the requirements of · secrecy are greater in some situations than in others." *Sells Engineering,* 463 U.S. at 445, 103 S.Ct. at 3149. *See Scheiner v. Wallace,* 1995 WL 753931, at *5 (S.D.N.Y. Dec. 19, 1995) (affirming disclosure where three years had passed since conclusion of grand jury proceedings and where plaintiffs needed grand jury testimony to impeach witness and demonstrate malicious prosecution charge). Accordingly, courts have substantial discretion in determining whether grand jury transcripts should be released. *Douglas Oil,* 441 U.S. at 223, 99 S.Ct. at 1675, *Scheiner* 1995 WL 753931 at *5 (quoting *United States v. Alexander,* 860 F.2d 508, 513–14 (2d Cir. 1988)).

 A particularized need is typically shown when a party seeks to use " 'the grand jury testimony … to impeach a witness, to refresh his recollection, to test his credibility and the like.' " *Douglas Oil,* 441 U.S. at 222, 99 S.Ct. at 1674 (quoting *United States v. Procter and Gamble Co.,* 356 U.S. 677, 683, 78 S.Ct. 983, 987, 2 L.Ed.2d 1077 (1958)). Other factors enter into determining whether the need for testimony outweighs secrecy interests. For example, disclosure is denied in cases where evidence could be obtained through ordinary discovery. *Cullen v. Margiotta,* 811 F.2d 698, 716 (2d Cir.1987) (denying disclosure where production of subpoenaed records provides information by which plaintiffs can identify witnesses and conduct their own interviews). Also, where parties seek disclosure in order to reduce delay and expense of trial preparation, courts generally deny discovery. *City of New York v. Liberman,* 1990 WL 212900, at *2 (S.D.N.Y. Dec. 12, 1990) (quoting *Procter and Gamble,* 356 U.S. at 683, 78 S.Ct. at 987). Finally, courts require that a request be narrowly drawn so as to allow the court to lift the secrecy of grand jury proceedings "discretely and limitedly." *Alexander,* 860 F.2d at 513 (quoting *Douglas Oil,* 441 U.S. at 221, 99 S.Ct. at 1674). *See Liberman,* 1990 WL 212900 at *2

(denying disclosure because request for wholesale disclosures of complete testimonies for impeachment at trial was neither discrete nor limited,); *Alexander,* 860 F.2d at 514 (denying disclosure of grand jury minutes to court and public, given sketchy justification that testimony needed for sentencing purposes).

CLS claims it has a particularized need for the grand jury testimony of five witnesses in the *Harris* prosecution: Christine Broderick, Gene Sebastian, Joe Shephard, Maria Agovino, and Craig Poler. CLS's request will be evaluated in this light.

### A. Christine Broderick

CLS argues it has a particularized need for the grand jury testimony of Christine Broderick, AroChem's cash manager, because Broderick gave testimony at trial which played a significant part in the Government's case against Harris for money laundering but then she gave contradictory testimony during her deposition. CLS argues that it needs her grand jury testimony in order to resolve the discrepancy between her trial testimony and deposition testimony and also in order to challenge the validity of Harris' conviction. At trial, Broderick testified she transferred AroChem monies from Chase to Union Trust to CLS and was instructed not to tell Chase about the transfers. At her deposition, Broderick denied she was instructed not to tell Chase about the transfers.

 CLS's claim that the testimony is necessary for the purpose of attacking Harris' conviction is not a compelling argument for release of grand jury transcripts. Such reasoning suggests that the *Harris* trial, long since completed, should be relitigated. However, finality of verdicts is an essential principle of our legal system. *See generally United States v. Hockridge,* 573 F.2d 752, 759 (2d Cir.1978), *cert. denied,* 439 U.S. 821, 99 S.Ct. 85, 86, 58 L.Ed.2d 112 (1978). Once the time for appeal has expired, a verdict stands. In addition, CLS is not the proper party to challenge the Harris verdict and this is not the proper forum.

■ Further, CLS admits that if Broderick's grand jury testimony were found to conflict with her trial testimony, then it would be merely consistent with her deposition statements. Thus, at best, the grand jury testimony serves to support an argument CLS can already make with evidence it possesses. To seek grand jury testimony for such "tiebreaker" purposes—to bolster evidence obtained through normal avenues of discovery—does not meet the requirements of a particularized need. *Cullen*, 811 F.2d at 716 (affirming denial of request for grand jury materials where the evidence could be obtained through ordinary discovery); *In re Federal Grand Jury Proceedings*, 760 F.2d 436, 439 (2d Cir.1985) (holding that an "asserted desire to cross examine effectively ... should not give a petitioner license to page through grand jury minutes"). Therefore, discovery is denied.

### B. Craig Poler

■ CLS seeks the grand jury testimony of Craig Poler, an AroChem trader, for similar reasons. CLS claims Poler gave contradictory deposition and trial testimony, thus impeaching his trial testimony and weakening the *Harris* verdict which was based in part upon this testimony. At trial, Poler testified that he was aware of the net open position limit imposed by the RCA Lenders on AroChem; that Harris never advised him of the limit; and that AroChem exceeded the limit eighty to eighty-five percent of the time. At his deposition, Poler testified that he had not known of the open position limit; that he did not know why he testified otherwise at trial; that he learned about the limit at trial; and that he gave the 80–85 percent figure because the Government asked him to, but the percentage was speculative.

As stated, attacking the *Harris* verdict is not a viable reason for releasing grand jury transcripts. Further, as the Government asserts, CLS already has sufficient evidence to impeach Poler's deposition testimony. CLS has a copy of Poler's trial testimony as well as the FBI's 302 report concerning its interview of him, both provided by the Government. Thus, again, CLS has failed to show that other avenues of discovery are unavailable. *See Cullen*, 811 F.2d at 715. Therefore, discovery is denied.

### C. Gene Sebastian and Joe Shephard

■ CLS's motives for seeking the grand jury testimony of Gene Sebastian and Joe Shephard, two members of AroChem's Board of Directors, are less straightforward. V.J. Dispenza, one of the principal officers of AroChem, testified at Harris' trial that Sebastian and Shephard were aware of, and part of, the conspiracy to defraud the RCA Lenders. CLS seeks Sebastian's and Shephard's grand jury testimony in order to impeach this testimony by Dispenza. However, CLS has not shown how impeaching this testimony would be relevant to the claims against them. Secondly, CLS admittedly has other evidence to impeach that testimony: Sebastian testified at Harris' trial that he wasn't involved in a conspiracy. Further, CLS has not attempted to depose Sebastian and Shephard and does not assert that the two are unavailable for deposition. *See Cullen*, 811 F.2d at 715. Finally, CLS's goal of invalidating Harris' conviction is not a compelling argument for disclosing grand jury testimony here. The discovery is denied.

### D. Maria Agovino

■ CLS seeks the transcripts of Maria Agovino to challenge the trial testimony of Dispenza. Agovino was an AroChem employee who prepared the borrowing base reports supplied to Drexel Burnham Lambert Trade Finance ("DBLTF"). At her deposition she testified that Dispenza sometimes changed the reports and ordered her not to talk to DBLTF about the reports. CLS claims that Agovino's grand jury testimony could show that the Government presented perjured testimony—of Dispenza—in gaining the conviction of Harris. CLS fails to show a particularized need. If CLS seeks to impeach Dispenza's trial testimony, it already has Agovino's deposition testimony. Moreover, as stated earlier, CLS's interest in attacking Harris' conviction by impeaching trial testimony is contrary to the judicial interest in verdict finality and, therefore, is

an inadequate reason for unveiling grand jury testimony.

### III. CONCLUSION

CLS's central purpose in requesting witness' grand jury testimony is to undermine the Harris conviction in order to substantiate its defense. Since this is not a viable foundation upon which to build its request, CLS's particularized need claims fails. CLS might plausibly support its request for release of transcripts by arguing that it is attempting to directly quash allegations of any wrongdoing on its part. Instead, CLS's claimed need for testimony is less direct: to show it was not conspiring with a third party—a party already tried and convicted—by attacking that party's conviction. The time period has passed to bring such an appeal; CLS is not the proper party to bring such a claim; and this court is not the proper forum to hear such an appeal. Thus, CLS has failed to show how its need for grand jury transcripts serves to prevent an injustice from occurring. Also, CLS has already been able to depose each witness whose grand jury testimony it seeks, thereby weakening its claim that its needs outweigh secrecy interests. In short, though CLS did submit a more narrowly tailored request, its supporting rationale fails to show a particularized need. Given the wide scope of discretion allowed in making this determination, I deny disclosure of the grand jury transcripts of these five witnesses.