**Raymond O. LONG, Jr., Petitioner–Appellant,**

**v.**

**Eric QUALLS, Warden, Respondent–Appellee.**

No. 14–5576.

United States Court of Appeals, Sixth Circuit.

Oct. 1, 2015.

Before: BATCHELDER, ROGERS, and COOK, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge.

Raymond Long, a Tennessee state prisoner, appeals the district court's denial of his petition for a writ of habeas corpus

made pursuant to 28 U.S.C. § 2254. We AFFIRM.

## I.

On the evening of December 23, 2003, someone smashed in the door of an apartment, shot both occupants (Ms. Falon Glaze and Mr. Terrance Scruggs) with one shot each, and fled immediately after the shooting. Glaze died within moments but Scruggs survived to call 911 and lasted until responders arrived, though not long enough to identify the shooter. Neighbors heard the breaking door, the two shots, and the shooter's flight, but did not see the shooter.

Glaze's family and friends immediately accused Long, Glaze's former boyfriend who had attempted to run her car off the road several months earlier and had just days earlier held a knife to her throat and threatened to murder her, Scruggs, and her entire family. The police questioned Long the next day and he asserted that he had been at drug rehabilitation class until 8:00 p.m., and had then taken a bus home because he was on court-ordered curfew. Under repeated questioning, he told police that he had received a ride home from the class, and later, that he had driven home from class. But when other witnesses told police that Long had attended a party that evening (and left with one Joseph Whitfield at about 11:00 p.m.), they re-questioned Long, who then told them that he had gone out that night and returned home the next morning.

On January 30, 2004, the police eventually located Whitfield, who told them that Long had murdered Glaze and Scruggs. According to Whitfield, he had known Long for a couple of months when, at a party on December 23, Long had pestered him to go somewhere with him. Eventually, Whitfield agreed to go, so Long drove them to an apartment complex, though they parked on the highway and climbed through a hole in the fence, before eventually going to a third-floor apartment. When Long unexpectedly broke down the door and entered the apartment, Whitfield remained in the hall confused, though when he heard the gunshots he fled. Long fled right behind him and Whitfield saw that Long was carrying a handgun. When he asked Long what had happened, Long did not answer. Whitfield left town the next day for the holidays.

The State charged Long with the murders, and Whitfield (among others) testified against him at trial. The defense emphasized the lack of any physical evidence connecting Long to the crime scene and certain inconsistencies in Whitfield's testimony. But defense counsel put on no actual defense and called no witnesses. The jury convicted Long and the court sentenced him to life in prison. Long appealed, unsuccessfully, and eventually moved for post-conviction relief, claiming, among other things, ineffective assistance of trial counsel.

Long argued that his trial counsel should have called his mother and father to testify that he was at home on the evening of the shooting. At the post-conviction hearing, his mother testified that Long was at home helping her set up a Play Station and his father testified that Long was at home helping him repair a TV. They each said they went to bed between 11:00 and 11:40 p.m. (after the news), that Long was still there with them, and that they never heard him leave their home. Long testified at a post-conviction hearing that he had been home that night until midnight, and denied that he had ever told the police differently, insisting that the police had fabricated that statement and had fabricated other statements and evidence too.

Long's trial counsel testified that he and Long met at least a dozen times before trial, that he had discussed a potential alibi defense with both Long and his mother, and that it "came up in a discussion" that Long claimed that he was at home with his parents on the night of the murders. However, he also remembered their telling him Long was out at a party and concluded that "it was going to be difficult to put that timeframe together with the facts in the case and the evidence that was going to be presented." R.18–9, p. 6 (post-conviction transcript). When pressed on his memory of when Long was home or where he was, counsel answered:

> Counsel: I don't remember the exact conversation, but I remember investigating and looking into that [alibi story] and it did not seem like something I could put before the Court.
>
> Question: So [Long] never advised you that he was home from pretty much 8:00 o'clock that evening until at least midnight on the night of the 23rd?
>
> Counsel: If he had told me that and I had some witnesses to that, I would have verified it. And if I didn't put it on here, then, obviously, I didn't have that evidence in front of me.
>
> Question: So did you talk to his mother about his whereabouts that evening and the timeline?
>
> Counsel: I talked to his mother on numerous occasions about this case.
>
> Question: And, so, according to your memory, she did not tell you that he was home from 8:00 o'clock until midnight that night?
>
> Counsel: I don't remember any positive evidence that I had that I could bring before the Court that Mr. Long was home that evening at the time the homicide was committed.

R.18–9, p. 6–8 (post-conviction transcript).

> Question: And you told [Long's post-conviction counsel] that you did dis-cuss this alibi defense with [Long's] mother, but you felt that it *didn't fit the timeline that Mr. Long was telling you about*; is that correct?
>
> Ryan: That's correct.
>
> Question: So you did explore putting on that defense and made a decision not to do so. You felt like it would harm, rather than help, Mr. Long's defense; is that correct?
>
> Ryan: That's correct.

R.18–9, p. 14–15 (post-conviction transcript) (emphasis added).

In its memorandum denying Long's petition for state post-conviction relief, the state post-conviction court (trial court) concluded:

> [I]t is highly suspect and nearly implausible that a criminal defense attorney with ten years trial experience when presented with a credible alibi would choose not to present it at trial. Rather, more likely as [Long] said in his statement to the police, he had left the apartment in the early morning hours of the incident. Additionally, two independent witnesses placed [Long] at a party, leaving and going with one of those witnesses to the scene of the homicides. *The Court accredits the testimony of trial counsel* that he was not presented with credible alibi witnesses and the alibi did not fit the time line of other evidence.

*Long v. Tenn.*, No. 08–1820, 2010 WL 1837934, *10 (Tenn.Ct.App., Apr. 19, 2010) (quoting the post-conviction trial court) (editorial marks omitted) (emphasis added). The Tennessee Court of Appeals affirmed, thoroughly considering and effectively adopting the post-conviction court's reasoning and concluding: "Based on our review, we conclude that the evidence does not preponderate against the post-convic-

tion court's finding that [Long] failed to prove by clear and convincing evidence that trial counsel's assistance in this regard was deficient." *Id.*

Long petitioned for federal habeas relief, claiming, among other things, ineffective assistance of trial counsel, and argued that this was an unreasonable determination of the facts and an unreasonable application of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The district court rejected Long's arguments in favor of the state court's credibility determination (i.e., that Long's trial counsel was credible, while Long and his parents were not). The district court granted Long a certificate of appealability on this claim and he has appealed it here.

## II.

Long's argues that the state court made an unreasonable determination of the facts by believing Long's trial counsel and disbelieving Long and his parents. Even if we rejected the state court's assessment of the witnesses and assumed that Long and his parents appeared more credible than his trial counsel, which we are generally not at liberty to do, *see Rice v. Collins,* 546 U.S. 333, 341, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006) ("Reasonable minds reviewing the record might disagree ... but on habeas review that does not suffice to supersede the trial court's credibility determination."), we would also have to also accept Long's contention that the police fabricated the police report containing his statement and disbelieve the state's multiple witnesses against him. Based on our careful review of the record, the state court's

determination of the facts was not unreasonable.

Long's other argument is that the state court unreasonably applied *Strickland* because his trial counsel's "strategic justification was not convincing." Apt. Br. at 23. Long depicts his counsel's strategic justification as being that the alibi did not fit the *state*'s theory or the "timeline offered by the[ ] prosecution witnesses," Apt. Br. at 24, and then attacks that justification because the very purpose of a defense alibi is to *dispute* the state's theory. But that wasn't counsel's justification. Counsel's reason was that the alibi story did not "fit the timeline that *Mr. Long was telling [him] about.*" R.18–9, p. 15 (emphasis added). That is, given the evidence and information counsel already had from Long, he did not and could not believe the proposed alibi story and, therefore, could not call those witnesses to testify to it. Or, as he stated during his post-conviction hearing testimony, counsel believed such apparently fabricated testimony would harm rather than help Long's defense and, consequently, he strategically chose not to present it.[1] The state courts accepted this explanation and, based on our careful review of the record, we find that the state court was not unreasonable in doing so.

There is no basis here to conclude that the state court acted unreasonably.

## III.

For all of the foregoing reasons, we AFFIRM the judgment of the district court.

---

1. Long also argues that his trial counsel was ineffective because he did not interview Long's father. However, because Long's father would have told exactly the same story as Long's mother and because trial counsel had already determined that the alibi defense has a whole was not maintainable, trial counsel had no need to interview Long's father. *See Fargo v. Phillips,* 58 Fed.Appx. 603, 607 (6th Cir.2003).